UNITED STATES of America, Appellant,

v.

Major J. HARRICK, Eddie Ahwash, Phillip Asseff, Joseph Andrew Sadd, Harry Edgar Whittington, George William McClaski, Henry Austin Drury, Fayes Howard Moses, Appellees.

No. 78–5009.

United States Court of Appeals, Fourth Circuit.

Argued July 19, 1978.

Decided Sept. 7, 1978.

Robert B. King, U. S. Atty., Charleston, W. Va. (James S. Arnold, Charleston, W. Va., Mary S. Feinberg, Asst. U. S. Attys., Roanoke, Va., on brief), for appellant.

James B. McIntyre, Charleston, W. Va., for appellees.

Before BUTZNER, RUSSELL and WIDENER, Circuit Judges.

BUTZNER, Circuit Judge:

The United States takes this interlocutory appeal as authorized by 18 U.S.C. § 3731 from the district court's pre-trial order suppressing evidence on the ground that the affidavit accompanying the application for a search warrant was insufficient to justify the magistrate's issuance of the warrant. We reverse.

I

The defendants were indicted on three counts relating to illegal gambling activities in violation of 18 U.S.C. §§ 371, 1952(a)(3), 1955, and 2. At their trial, the government planned to introduce gambling paraphernalia seized at a pool room during a search by officers of the Charleston, West Virginia, police department under a warrant issued by a judge of the Charleston Municipal Court.

Evidence presented at the suppression hearing disclosed that Samuel Elmore, a Charleston police officer, applied for the

search warrant. In support of his application, he executed an affidavit on oath before a municipal judge. The affidavit alleged violations of the code of the City of Charleston and specified that "Tip Tickets, Tip Books, Monies, and other Gambling Paraphernalia" were concealed at The Diamond Billiards, the location of which was precisely described. As the basis for its allegations, the affidavit recited:

> . . . That an agent working under the supervision of Samuel Elmore, a Charleston City Police Officer on the 4th day of February 1977, did enter the Diamond Billiards, described above and while inside did purchase tip tickets being sold by Robert Legg, contrary to the City Ordinances of the City of Charleston, Kanawha County West Virginia.

In addition, Officer Elmore furnished the city magistrate an unsworn statement prepared by the undercover agent mentioned in the affidavit.[1] This agent was also present at the magistrate's office.

After the magistrate received the statement, he administered an oath to the agent as a witness, but before the agent testified, Officer Elmore left the room to speak to someone else. Subsequently, the magistrate issued the warrant.

At the suppression hearing, the government, without objection, represented to the court that the magistrate had no independent recollection of the application for the warrant but that he could testify that he always personally examined undercover agents before issuing warrants on the basis of information supplied by them. The government declined to call the agent to testify because it wished to keep his identity secret. Therefore, no evidence was presented at the suppression hearing about the agent's testimony before the magistrate.

Granting the motion to suppress, the district court ruled that the government had

failed to show that the magistrate possessed a sufficient basis, obtained under oath or affirmation, for crediting the information offered in support of the issuance of the warrant. The court also ruled that the affidavit did not contain a sufficient basis for concluding that the seller of the tickets possessed a proprietary interest in the premises to be searched or that others on those premises knew of the sale or were engaged in similar activity.

## II

An affidavit offered to show probable cause for the issuance of a search warrant may be based on hearsay when there is "substantial basis for crediting the hearsay." *Jones v. United States*, 362 U.S. 257, 269, 80 S.Ct. 725, 735, 4 L.Ed.2d 697 (1960). This basis can be established by affidavits which disclose to the magistrate the underlying circumstances that (1) caused the informant to conclude that the objects of the search are in the premises to be searched, and (2) caused the affiant to believe that the informant is credible or his information is reliable. *Aguilar v. Texas*, 378 U.S. 108, 114, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). The requirements of *Aguilar* can be met by corroborating evidence of which the affiant has personal—not hearsay—knowledge or by reasonable inferences that establish a substantial basis for relying on the hearsay evidence furnished by the informant. *Spinelli v. United States*, 393 U.S. 410, 415, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *United States v. Harris*, 403 U.S. 573, 580–81, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971). The standards formulated by these cases derive from the fourth amendment's essential requirement that sufficient underlying information be presented to allow a "neutral and detached" magistrate, not the police officer seeking the warrant, to draw the necessary inferences to find probable cause.[2] *See Aguilar v. Texas*, 378 U.S. at 111, 84 S.Ct. 1509.

---

1. The district court permitted the officer to testify that he gave the statement to the magistrate, but it excluded the statement because there was no proof that the magistrate read it or that the agent testified as to its authenticity.

2. The fourth amendment to the Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not

*Aguilar, Spinelli,* and *Harris* dealt with situations where only the police officer, not the informant, appeared before the magistrate. Nevertheless, we believe that their basic principles can be applied to sustain the warrant in this case.

### III

There can be no doubt that there was a literal compliance with the fourth amendment's requirement that evidence offered to show probable cause for the issuance of a search warrant must be supported by "oath or affirmation." The magistrate administered oaths to Officer Elmore and the undercover agent before the warrant was issued.

■ There can also be no question about the sufficiency of information furnished the magistrate concerning the reasons why the undercover agent believed the objects of the search were in the premises to be searched. Elmore's affidavit discloses that the basis of the agent's knowledge was his purchase of gambling tickets in the premises. Here, as in *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), and *United States v. Harris,* 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971), the affidavit relates the observation of the informant. Personal observations of this nature are sufficient to satisfy *Aguilar's* first test because they fully explain the underlying circumstances for believing that the premises contain contraband. *See United States v. Harris,* 403 U.S. at 581, 91 S.Ct. 2075.

■ The difficulty which primarily concerned the district court was the paucity of information about the agent's reliability. We believe, however, that the lack of direct evidence of the agent's testimony before the magistrate does not render the search warrant invalid.

Elmore averred that the agent was working under his supervision. This in itself is an indication of credibility. The recitation of this fact in the affidavit establishes that the undercover agent was not a casual tipster—he was selected by the officer to assist in the gambling investigation under his supervision. The record contains nothing that could have caused the magistrate to conclude that the police employed an unreliable undercover agent. When an officer applies for a search warrant based on information supplied by fellow officers, it is unnecessary for him to vouch the reasons he has for believing his informants are reliable. *Cf. United States v. Welebir,* 498 F.2d 346, 349 n.2 (4th Cir. 1974). In view of the undercover agent's selection and supervision and of the fact that there is no ground for suspecting his reliability, we believe that the same principle applies here.

Moreover, Officer Elmore instructed the undercover agent to meet him at the magistrate's office so that official could satisfy himself about the truth of the agent's account of the purchase of gambling tickets which Elmore had related in his affidavit. Elmore's presentation of the agent to the magistrate for examination under oath is a convincing demonstration of the officer's confidence in the agent's reliability. It was also the best possible means of affording the magistrate the opportunity to make a detached assessment of the truth of the information contained in Elmore's affidavit. Even though the agent's testimony cannot be reconstructed by the magistrate or Elmore, the fact that the magistrate did not issue the warrant until after he had administered an oath to the undercover agent justifies the inference that he was satisfied with the truth of the agent's account contained in Elmore's affidavit. We therefore conclude that the second test required by *Aguilar v. Texas,* 378 U.S. 108, 114, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), has been met.

### IV

■ We also conclude that the warrant was not defective because it lacked allega-

---

be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

tions linking the seller of the gambling tickets more closely to the premises or implicating others on the premises in the illegal activity. Testing the affidavit in the "commonsense and realistic fashion" repeatedly endorsed by the Supreme Court, we cannot label as unreasonable or constitutionally impermissible the magistrate's conclusion that these premises were apt to have been more than incidentally connected with the illegal transaction that allegedly took place there. *See United States v. Harris*, 403 U.S. 573, 577, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971).

The order of the district court is vacated, and the case is remanded for further proceedings consistent with this opinion.