UNITED STATES of America, Appellee,

v.

Gilbert WYLIE, Appellant.

No. 82–5150.

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 14, 1983.

Decided April 21, 1983.

Thomas B. Hamilton, Deputy Federal Public Defender, Baltimore, Md. (Richard B. Bardos, Law Clerk on brief), for appellant.

James P. Ulwick, Asst. U.S. Atty., Newark, N.J. (J. Frederick Motz, U.S. Atty., Baltimore, Md., on brief), for appellee.

Before HALL, MURNAGHAN and SPROUSE, Circuit Judges.

MURNAGHAN, Circuit Judge:

Gilbert Wylie was convicted at a bench trial on March 10, 1982 of possession with intent to distribute, conspiracy to distribute, and conspiracy to possess with intent to distribute heroin in violation of 21 U.S.C. §§ 841(a)(1) and 846. The indictment had been based in part upon evidence seized from an apartment located on Garrison Street on May 22, 1982 pursuant to a search warrant issued on March 18, 1982. After his indictment but prior to trial, Wylie sought to have the evidence so seized suppressed, but after a hearing his motion was denied. Wylie now appeals from his conviction, arguing solely that his Motion to Suppress Tangible and Derivative Evidence was wrongly denied.

Wylie contends that there was an insufficient basis for the magistrate's finding of probable cause. The search warrant issued was based upon two affidavits sworn to by Drug Enforcement Administration special agent John F. Ryan. Within those affidavits, Agent Ryan refers frequently to information supplied to him by two anonymous informants, Source One and Source Two. The two informants in turn are quoted with some regularity as to information supplied or statements made to them by various other anonymous persons. Thus, the affidavits contain two layers of hearsay.

As the appellant acknowledges, hearsay is not in and of itself illegitimate in an affidavit offered in support of an application for a search warrant. As long as a "substantial basis for crediting the hearsay is presented," such hearsay may be sufficient to establish probable cause. *Jones v. United States,* 362 U.S. 257, 269, 271, 80 S.Ct. 725, 735, 736, 4 L.Ed.2d 697 (1960). There must be information offered to the magistrate from which he or she can independently assess the informant's reliability, credibility or veracity; and there must be a statement of the circumstances underlying the manner in which the information was gathered (or, at the very least, a detailed description of the accused's criminal activity) sufficient to allow the magistrate to

conclude that there is before him or her "... something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." *Spinelli v. United States,* 393 U.S. 410, 416, 89 S.Ct. 584, 589, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas,* 378 U.S. 108, 114, 84 S.Ct. 1509, 1513, 12 L.Ed.2d 723 (1964); *United States v. Harrick,* 582 F.2d 329, 331 (4th Cir.1978).

■ In affidavits containing two layers of hearsay, the same two-prong test must be applied to each level of hearsay. However, double hearsay may satisfy the test. *United States v. Welebir,* 498 F.2d 346, 349 n. 2 (4th Cir.1974) ("... [H]earsay, even 'second hearsay', may provide a legal basis for a search warrant."); *United States v. McCoy,* 478 F.2d 176, 179 (10th Cir.1973), *cert. denied,* 414 U.S. 828, 94 S.Ct. 53, 38 L.Ed.2d 62 (1973) ("That an affidavit for a search warrant may be based on hearsay is well established.... Indeed, such is usually the case. As concerns so-called double hearsay ... when a magistrate receives an affidavit which contains hearsay on hearsay, he need not summarily reject this double hearsay information, but is rather called on to evaluate such information as well as all other information in the affidavit in order to determine whether the informant gathered his information in a reliable way and from reliable sources."); *United States v. Wilson,* 479 F.2d 936, 941 (7th Cir.1973) (*en banc*) ("If hearsay information is acceptable in arriving at probable cause, and it is, ... then hearsay based on hearsay should be acceptable as long as the police officer [or magistrate] has sufficient information so that both levels of hearsay meet the two-pronged test spelled out in *Aguilar.*" [citation omitted]); *see also United States v. Skramstad,* 649 F.2d 1259, 1263 (8th Cir.1981); *United States v. Kleve,* 465 F.2d 187, 191–92 (8th Cir.1972); and *United States v. Smith,* 462 F.2d 456, 459 (8th Cir.1972).

In the case at bar, appellant Wylie concedes that Sources One and Two meet the first prong of the *Aguilar-Spinelli* test, that of veracity or reliability. Wylie argues, however, that, because the anonymous informants from which Sources One and Two gathered certain portions of their information do not meet either prong of the test, and because Sources One and Two therefore do not meet the second prong of the test (that of establishing a basis for their statements beyond speculation or rumor), the information in the affidavits is not adequate to support the magistrate's finding of probable cause. Wylie therefore contends that the issuance of the warrant was in violation of the Fourth Amendment. Wylie further argues that, even if the disputed portions of the affidavits might legitimately be credited by the magistrate, probable cause is not established.

Upon a close review of the record, however, we conclude that, even ignoring those portions of the affidavits challenged by Wylie, there remain in the affidavits sufficient first-hand information and hearsay meeting both prongs of the *Aguilar-Spinelli* test to establish probable cause and satisfy the Fourth Amendment. We therefore do not reach the issue of whether the disputed portions of the affidavit meet the requirements of *Aguilar* and *Spinelli.*

Numerous unassailable pieces of information in the affidavits connected Wylie to heroin trafficking. The affiant, Agent Ryan, described how he had been familiar with Wylie for more than two years. In March of 1979 the execution of three search warrants led to Wylie's arrest for possession with intent to distribute heroin. Ryan, who was familiar with the investigation of that case, stated that the three warrants had been for searches of two apartments and a motel room. The three locations had been rented by two "girlfriends" of Wylie's, and the searches of the locations produced quantities of heroin, over $7,000.00 in cash, 16 pounds of quinine hydrochloride, twelve jars of lactose (both used to cut or adulterate heroin), and other drug paraphernalia. At the time of the swearing of the affidavits presently before us, Wylie was awaiting trial on the charges growing out of the earlier search warrants.

Source One (whose veracity is unchallenged) reported first-hand observation of heroin, quinine (used to cut heroin) and other drug paraphernalia at the Eagle Coal Company in a truck in May of 1981. Agent Ryan reported in the affidavit that the truck was later found to have been titled to the company by Wylie, who was registered as the legal owner of the company. After establishing surveillance of the Eagle Coal Company on May 7, 1981, Agent Ryan observed, in the course of one day, numerous people coming and going from the company office while Wylie was there, saw Wylie counting money which one man had delivered, and heard Wylie tell another man that the "package" (which Ryan knew to be a slang term for heroin) would be ready the next day. Ryan saw Wylie leave the coal company premises in a particular tan colored van; the same van was observed leaving the parking lot of the Garrison Street apartment later that same evening without Wylie in it. Finally, Ryan saw someone he knew as "Bucky" arrive at the coal company, see it was closed, and leave. Source Two (whose veracity is also unchallenged) subsequently told Ryan that Bucky was a heroin distributor and that Source Two had personally bought heroin from Bucky.

Source One had told Ryan that Wylie could be reached at a particular phone number, which proved to be that of a woman living in the Garrison Street apartment. Source One also told Ryan that Wylie was in fact at the Garrison Street apartment approximately 1¼ hours after the van had been observed leaving the parking lot without Wylie.

█ It is clear that tips which do not meet the *Aguilar-Spinelli* tests may still provide a legitimate basis for probable cause and for the issuance of a search warrant if they are corroborated (a) by other matters within the officer's knowledge, *Jones v. United States, supra,* 362 U.S. at 269–70, 80 S.Ct. at 735; (b) by evidence of which the affiant has personal knowledge or by reasonable inferences establishing a substantial basis for relying on an informant's hearsay evidence, *United States v. Harrick,* 582 F.2d 329, 331 (4th Cir.1978), *Spinelli v. United States, supra,* 393 U.S. at 415, 89 S.Ct. at 588; or (c) by subsequent evidence gained during the police investigation, *United States v. Haynie,* 637 F.2d 227, 233 (4th Cir.1980), *cert. denied,* 451 U.S. 972, 101 S.Ct. 2051, 68 L.Ed.2d 351 (1981); *United States v. Baker,* 577 F.2d 1147, 1150–52 (4th Cir.1978), *cert. denied,* 439 U.S. 850, 99 S.Ct. 154, 58 L.Ed.2d 153 (1978).

Here, appellant Wylie concedes that the tip concerning Wylie's phone number and that establishing Wylie's presence in the Garrison Street apartment were corroborated: the phone number proved to be that of the Garrison Street apartment, and the van in which Wylie had been seen earlier that day left the apartment complex without him that evening. In much the same way, a tip from Source One that an individual named Reds Delly was en route to the apartment was corroborated by agents observing Reds Delly's arrival as predicted.

Appellant Wylie argues that, based on the above information, a search of the Eagle Coal Company might have been warranted, but that no probable cause was shown to justify a search of the Garrison Street apartment, and cites cases purporting to support that proposition. In each of the cases cited, however, in which residential searches were disallowed, there had been no information linking established criminal activities to the residence. Here, on the contrary, that crucial element is present: Ryan himself knew from past experience that Wylie had used "girlfriends" to rent residential locations for the storage of heroin and drug paraphernalia in the past.[1] The case at bar is therefore easily distinguishable from cases cited by appellant, for example: *United States v. Green,* 634 F.2d 222, 224–26 (5th Cir.1981) (extensive information concerning wide variety of criminal activities in California, without

---

1. "The existence of probable cause is not to be determined by isolating, as the appellant has sought to do, the several factors known to the arresting officers but by a careful analysis of all the facts known at the time by them." *United States v. Baker, supra,* 577 F.2d at 1151.

more, did not provide probable cause for the search of a Key West, Florida home and the seizure of four firearms and 200 pounds of other items wholly unrelated to the alleged criminal activity in California); *United States v. Gramlich*, 551 F.2d 1359, 1361–62 (5th Cir.1977), *cert. denied*, 434 U.S. 866, 98 S.Ct. 201, 54 L.Ed.2d 141 (1977) (seizure of appellant's boat loaded with contraband off the coast of Columbia and information that appellant had been seen operating two cars, a van and a motorboat out of his residence in Alabama over a three-week period did not supply probable cause to support warrant to search the Alabama residence); *United States v. Flanagan*, 423 F.2d 745, 746–47 (5th Cir.1970) (information that appellant had burglarized a home in Houston, that appellant had been arrested in Dallas with some of the stolen items in his possession, and a conclusory assertion of affiant's personal belief that the remainder of the stolen items were to be found in appellant's residence in Forth Worth did not furnish probable cause for the search of the residence).

■ Under the Fourth Amendment, probable cause sufficient to obtain a search warrant " . . . exists where the facts and circumstances within the affiant's knowledge, and of which he has reasonably trustworthy information, are sufficient unto themselves to warrant a man of reasonable caution to believe . . ." that seizable items might be found at a particular location. *Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925); *Brinegar v. United States*, 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–1311, 93 L.Ed. 1879 (1949); *Berger v. New York*, 388 U.S. 41, 55, 87 S.Ct. 1873, 1881, 18 L.Ed.2d 1040 (1967). Stated in another way,

> As we understand the structure and language of the Fourth Amendment and our cases expounding it, valid warrants to search property may be issued when it is satisfactorily demonstrated to the magistrate that fruits, instrumentalities or evidence of crime is located on the premises.

*Zurcher v. The Stanford Daily*, 436 U.S. 547, 559, 98 S.Ct. 1970, 1978, 56 L.Ed.2d 525 (1978).

■ The affidavits of Ryan clearly provided a reasonable basis for a belief that Wylie was engaged in the processing and sale of heroin. The indirect links of Wylie with the Garrison Street apartment (the phone number and empty van leaving the parking lot), which apartment was rented by a woman, the concededly corroborated tip that Wylie was actually inside the apartment in question, and, most importantly, the personal knowledge of Ryan concerning Wylie's past practice of storing his heroin at locations procured by girlfriends, all combine to provide the requisite grounds for a magistrate reasonably to conclude that heroin was to be found at the Garrison Street apartment.

Probable cause having been found without resort to the challenged portions of the affidavits, we do not decide the *Aguilar-Spinelli* questions raised as to those portions of the affidavits. Based on the unchallenged portions of the affidavits alone, we

AFFIRM.