sent the defendant's timely assistance in detecting it." *Frady,* 456 U.S. at 163, 102 S.Ct. at 1592; *see also United States v. Young,* 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985); *Government of Virgin Islands v. Knight,* 989 F.2d 619, 630–31 (3d Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 556, 126 L.Ed.2d 457 (1993); *Government of Virgin Islands v. Smith,* 949 F.2d 677, 681 (3d Cir. 1991); *United States v. Wright,* 921 F.2d 42, 46 (3d Cir.1990), *cert. denied* 501 U.S. 1207, 111 S.Ct. 2803, 115 L.Ed.2d 976; *United States v. Sandini,* 888 F.2d 300, 309 (3d Cir.1989), *cert. denied,* 494 U.S. 1089, 110 S.Ct. 1831, 108 L.Ed.2d 959.

In this case, the trial judge was not "derelict" in failing to grant a mistrial. As we have said, it is far from clear that the prosecutor's remarks were so prejudicial that they could not be remedied by curative instructions. Furthermore, since the defense requested curative instructions rather than a mistrial, the trial judge was entitled to assume that the defense did not want a mistrial. Under such circumstances, the test for granting a mistrial is "manifest necessity." *See, e.g., Oregon v. Kennedy,* 456 U.S. 667, 672, 102 S.Ct. 2083, 2087, 72 L.Ed.2d 416 (1982); *Arizona v. Washington,* 434 U.S. 497, 509, 98 S.Ct. 824, 832, 54 L.Ed.2d 717 (1978). There was no "manifest necessity" here. Consequently, we hold that the Territorial Court did not commit plain error in failing to declare a mistrial *sua sponte.*

### IV.

We turn finally to Charleswell's cross-appeal. The arguments that Charleswell raises in his cross-appeal[4] were raised before the Appellate Division, but they were not addressed by that court, and we decline to address these arguments in the first instance. Instead, we will remand so that they can be decided initially by the Appellate Division.

---

4. If accepted, Charleswell's argument that he was entitled to judgment of acquittal on counts I and II would result in alteration of the district court's judgment. It is therefore a proper subject for cross-appeal. Charleswell's remaining arguments, if accepted, would merely provide alternative grounds for affirming the district court's order granting a new trial, and conse-

For these reasons, the order of the Appellate Division of the District Court is reversed, and the case is remanded for further proceedings consistent with this opinion.

**UNITED STATES of America, Plaintiff–Appellant,**

**v.**

**Gregory Wayne CLUTCHETTE, a/k/a Black Blackstone, a/k/a Al Qawi, Defendant–Appellee.**

**No. 93–5511.**

United States Court of Appeals, Fourth Circuit.

Argued Feb. 10, 1994.

Decided May 11, 1994.

---

quently Charleswell could have raised them without cross-appealing. *See* 15A Charles A. Wright et al., *Federal Practice and Procedure* § 3904 (1992 & Supp.1994) (citing cases). In any event, since the district court did not reach any of these arguments, we find it appropriate to remand so that that court can consider them in the first instance.

**ARGUED:** Joseph Harrison Young, Asst. U.S. Atty., Baltimore, MD, for appellant. Arthur Reynolds, Washington, DC, for appellee. **ON BRIEF:** Gary P. Jordan, U.S. Atty., Raymond A. Bonner, Asst. U.S. Atty., Baltimore, MD, for appellant.

Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and HALL and WILKINSON, Circuit Judges.

Reversed and remanded by published opinion. Judge K.K. HALL wrote the opinion, in which Justice POWELL and Judge WILKINSON joined.

## OPINION

K.K. HALL, Circuit Judge:

█ The government appeals an order suppressing evidence seized pursuant to a warrant applied for by state authorities and issued by a state judge over the telephone. We hold that the officers acted in good faith reliance on the validity of the warrant, and we reverse the suppression order and remand for further proceedings.

### I

Montgomery County, Maryland, police received information that Gregory Wayne Clutchette had absconded from parole in California in 1975 and might be living in Maryland. Investigation revealed that a man driving a black Mercedes and identifying himself as "al Qawi" had been arrested in Maryland in 1988 for assaulting an officer and resisting arrest. A subsequent check revealed that al Qawi's fingerprints matched Clutchette's. He had given an address that turned out to be that of a mail receiving service at which al Qawi had rented a mail box. Montgomery County police, who had a warrant for Clutchette's arrest, began surveilling this mail box and observed various persons collecting its contents and driving to a home on Foxlair Road in Gaithersburg or one on Walnut Creek Court in Germantown. A Walnut Creek neighbor told police that a man living there fit Clutchette's description and drove a black Mercedes.

On April 3, 1992, the police saw a black Mercedes at the Foxlair address. They staked out the home at 1:45 P.M. and radioed for assistance. By 2:30 P.M., five officers were present. The officer in charge, Detective Patterson, decided to get a search warrant to enter the two homes. Contacted by

radio, his supervisor, Sergeant Kessler, agreed with Patterson's assessment that none of the officers could be spared to leave to obtain a warrant in person. Kessler put Patterson in touch with Assistant State's Attorney Thomas Tamm, and Tamm and Patterson discussed getting a warrant via telephone to search the two residences. Tamm told Patterson that it was possible to obtain a telephonic warrant and that such warrants had been issued in the past. Tamm also spoke to Judge James Ryan of the Maryland Circuit Court and discussed the procedures to be followed.

Patterson then called Judge Ryan and explained the circumstances, including the officer's fear that he could not spare anyone to apply for the warrant in person. Patterson recorded his end of the conversation. Although it is unclear whether Judge Ryan thought that Patterson's equipment would be recording him (the judge) as well, Judge Ryan made his own contemporaneous notes of the conversation. Patterson's recording disclosed that he recited an oath. Judge Ryan approved the warrant applications over the phone.

Officer Patterson requested the assistance of a SWAT team to execute the warrants. Before the police were able to attempt to execute them, however, Clutchette left the house in his Mercedes followed by two women in another car. He was arrested a mile from the house, and the two women were detained. One of the women, Priscilla Clarke, was carrying a loaded handgun. Informed of the search warrants, Clarke told the police that she owned the Foxlair house and that there was another gun there. The Foxlair search, which was conducted at about 6:00–6:30 P.M., turned up several guns as well as a picture of Clutchette holding a shotgun found in the search. Clarke gave the police a key to the Walnut Creek house, and that search turned up several more guns.

Four days later, Patterson provided Judge Ryan with written affidavits and proposed warrants that were consistent with the earlier telephone conversation. The judge signed the warrants.

## II

Clutchette was charged with two counts of violating 18 U.S.C. § 922(g), felon in possession of a firearm, for two of the guns found in the Foxlair house. He moved to suppress the guns on the ground that the telephonically-procured warrants were invalid under Maryland law. A hearing was held at which Judge Ryan, Patterson, Tamm, and one of the searching officers testified. The court ruled that, although telephone warrants are not per se violative of the Fourth Amendment, Maryland law makes no provision for such warrants and there was no valid reason for departing from the state statutory requirement that the warrant application be in writing. Accordingly, the court ordered that the evidence seized during the searches of the two residences be suppressed.

The government appeals.

## III

### A

The Fourth Amendment requires that warrants (1) be issued by a neutral and detached magistrate, (2) be based upon probable cause supported by oath, and (3) contain a particular description of the place to be searched and things to be seized. Evidence obtained in violation of the Fourth Amendment is subject to exclusion at trial. *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). In *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the Court held that the Fourth Amendment exclusionary rule should not be applied to bar the use in the prosecution's case-in-chief of evidence obtained by police officers acting in reasonable reliance on a search warrant issued by a neutral and detached magistrate but ultimately found to be invalid.

Instead of basing its decision on one of the above-enumerated components—bias on Judge Ryan's part, failure of Patterson to take an oath, insufficient probable cause that evidence of a crime would be found in the places to be searched, or lack of particularity in describing the places to be searched or the

things to be seized [1]—the court based the suppression order on a finding that "there was not sufficient reason to depart from the written warrant requirement" contained in Md.Code Ann. Art. 27, § 551(a) (1992 Repl. Vol.). Additionally, the district court determined that the warrants were unsalvageable even under the good faith exception established in *Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), because, even if the warrants were valid when initially issued, the arrest of Clutchette dissipated the exigency that arguably made the telephone procedure necessary.[2] According to the court, the officers' post-arrest reliance on the validity of the warrants was "objectively unreasonable" because they should have known that the warrant would never have been issued over the telephone without a need to circumvent the usual procedure. Without deciding the issue of the validity of telephone warrants under Maryland law, we reverse on the grounds that the officers acted in good faith reliance on the warrants' validity.

### B

It might be best to begin with what the district court did *not* rely on in ordering suppression. In its memorandum opinion, the district court stated that "[t]he tape recording of Officer Patterson's voice discloses that he explained the reasons for the search warrant, described the locations to be searched, and explained the type of evidence the officers were seeking. The tape also contains an oath by Officer Patterson...." The court did not hold that Officer Patterson's stated grounds for a warrant did not

establish probable cause to believe that evidence of a crime would be discovered at the place to be searched. There is no indication that the information related by Patterson with regard to the existence of probable cause was false, and there is also no basis to believe that Judge Ryan was anything less than "neutral and detached." [3] Finally, the district court did not rule that the warrants failed to describe the place to be searched and the things to be seized with sufficient particularity. The source of the invalidity was state law.

### C

The focus of the district court was on whether it was necessary to proceed via telephone rather than in person. While the Fourth Amendment was certainly not violated by Officer Patterson's possible overestimation of the exigencies of the situation, the court was unable to fully accept Officer Patterson's concerns about the need to act over the telephone. These concerns were that none of the officers or vehicles at the Foxlair stakeout could be spared to travel to apply for the warrant in person because he did not know how many persons were in the house. Moreover, it was known that one of the women at the house had a gun permit. The court noted that no attempt was made to contact other units for assistance, despite the passage of about two hours between the issuance of the warrant and the arrest of Clutchette. The court, while conceding that telephone warrants obtained by Maryland police "may not violate the Fourth Amendment *per se,*" went on to hold that "such a

---

1. The post-search application for the warrant speaks of searching for evidence of the "crimes of escape; harboring a fugitive; failure to appear ..., this evidence being the body of Clutchette; papers tracing Al [sic] Qawi and his real identity; documents pertaining to harboring and escape." The district court noted that "[t]he tape recording of Officer Patterson's voice discloses that he explained the reasons for the search warrant, described the locations to be searched, and explained the type of evidence the officers were seeking."

2. While the need to proceed over the telephone may have subsided, probable cause for the search was not appreciably diminished after Clutchette's arrest. *Cf. United States v. Ricciar-*

*delli,* 998 F.2d 8, 12 (1st Cir.1993) ("[A]bsence of exigent circumstances does not outlaw the use of anticipatory warrants.... [T]he justification for a search does not vanish merely because the circumstances are such that the evidence could have been obtained through à more familiar method.").

3. The district court expressed some concern that it was unable to "reconstruct the full record upon which Judge Ryan issued the warrants ..." and felt that this detracted from the warrants' validity. However, the record, which includes the tape recording of Patterson's half of the telephone conversation with Judge Ryan, gives us at least as much information as would have been presented in a written application.

procedure is not justified unless there are reasons for departing from the written warrant requirement." The court found that there were no exigent circumstances that would justify the warrants in this case.

In this circuit, we have yet to address how, if at all, violations of *state* law in the issuance of a state warrant affect the exclusionary rule analysis set forth in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The prevailing view appears to be that violations of state law alone do not normally compel exclusion of evidence in the federal courts. *See United States v. Walker*, 960 F.2d 409, 415–16 (5th Cir.) ("Whether the Fourth Amendment has been violated is determined solely by looking to the federal law on the subject."), *cert. denied,* — U.S. —, 113 S.Ct. 443, 121 L.Ed.2d 362 (1992); *but see United States v. Mota*, 982 F.2d 1384, 1388 (9th Cir.1993) ("[I]n evaluating a custodial arrest executed by state officials, federal courts must determine the reasonableness of the arrest in reference to state law governing the arrest."). We decline to address the questions of the validity of telephone warrants under Maryland law and of the interplay between state law and the Exclusionary Rule.

We turn instead to the question of the reasonableness of the officers' reliance on the warrants' validity.[4]

### D

Although a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search ... the officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable, ... and it is clear that in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued.

*Leon*, 468 U.S. at 922–23, 104 S.Ct. at 3420 (emphasis added) (internal citations and quotation omitted). The Court outlined four situations in which such reliance would not be reasonable: (1) the magistrate was misled by information in the affidavit that the officer "knew was false or would have known was false except for his reckless disregard of the truth"; (2) the magistrate "wholly abandoned his judicial role. . . ."; (3) the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) "depending on the circumstances of the particular case, a warrant may be so facially deficient ... that the officers cannot reasonably presume it to be valid." *Id.* at 923, 104 S.Ct. at 3421. The district court's decision implicates only the fourth situation. We do not agree that the absence of a contemporaneous written application and of exigent circumstances renders the warrants in this case "so facially deficient" as to preclude reasonable reliance on their validity.

### E

Officer Patterson first called his superior, Sergeant Kessler, who apparently agreed with Patterson's assessment that no officers should leave to apply for the warrant in person. Kessler and Patterson explained the situation to State's Attorney Tamm, who in turn spoke to a number of attorneys in his office about the possibility of obtaining a telephone warrant. Satisfied that the procedure was legal and feasible, Tamm spoke to Judge Ryan and was told to have Patterson call. Although he had never issued a telephone warrant before, Judge Ryan accepted Patterson's representation that "there was some emergency to it. On that basis, I felt it was appropriate." This sequence of events strongly militates in favor of finding objectively reasonable reliance on the warrants' validity. *See United States v. Brown*, 951 F.2d 999, 1005 (9th Cir.1991) (officer's consultation with a government attorney is of significant importance to a finding of good faith). As the Court noted in a case decided the same day as *Leon*, "[t]he officers ... took every step that could reasonably be

---

4. In *Leon*, the Supreme Court noted that reviewing courts have the discretion to consider questions of the officers' good faith without deciding the Fourth Amendment issue. 468 U.S. at 925, 104 S.Ct. at 3421–22. *See United States v. Livesay*, 983 F.2d 135 (8th Cir.1993); *United States v. Satterwhite*, 980 F.2d 317 (5th Cir.1992).

expected of them." *Massachusetts v. Sheppard,* 468 U.S. 981, 989, 104 S.Ct. 3424, 3428, 82 L.Ed.2d 737 (1984).

The test is one of objective reasonableness. *United States v. George,* 971 F.2d 1113 (4th Cir.1992). There is no indication that Patterson attempted to mislead the judge about the need to proceed over the telephone; at most, Patterson overestimated the gravity of the situation in the field or he was remiss in failing to summon additional help. Officer Patterson consulted with his superior, Sergeant Kessler, and State's Attorney Tamm. Tamm consulted with attorneys in his office and with Judge Ryan. A reasonable officer standing in Patterson's shoes could not be expected to have known that the warrants that were eventually issued were invalid; at the very least, the warrants cannot be deemed "so facially deficient" as to preclude any reasonable reliance on their validity. *See Illinois v. Krull,* 480 U.S. 340, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987) (holding that state officer's reliance on constitutionality of state statute authorizing warrantless searches, which statute was subsequently declared unconstitutional, was objectively reasonable).

The order suppressing the evidence uncovered in the search of the Foxlair and Walnut Creek residences is reversed, and the case is remanded for further proceedings.

*REVERSED AND REMANDED.*