45 F.3d 428
NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Torre Maurice BROWN, Defendant-Appellant.
 No. 94-5023.
 United States Court of Appeals, Fourth Circuit.
 Argued: September 30, 1994.
Decided: December 29, 1994.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. J. Frederick Motz, Chief District Judge. (CR-93-166-JFM)
 ARGUED: Harry Levy, SHULMAN, TREEM, KAMINKOW & GILDEN, P.A., Baltimore, Maryland, for Appellant. E. Thomas Roberts, Assistant United States Attorney, Baltimore, MD, for Appellee. ON BRIEF: Kenneth W. Ravenell, SHULMAN, TREEM, KAMINKOW & GILDEN, P.A., Baltimore, MD, for Appellant.
 Lynne A. Battaglia, United States Attorney, Baltimore, Md, for Appellee.
 D.Md.
 AFFIRMED.
 Before WILLIAMS and MICHAEL, Circuit Judges, and MICHAEL, United States District Judge for the Western District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Torre Maurice Brown appeals his conviction for possession with intent to distribute heroin in violation of 21 U.S.C. Sec. 841(a)(1) (1988). Pursuant to a conditional plea of guilty entered into with the Government and approved by the district court, Brown specifically reserved appellate review of the district court's denial of his motion to suppress evidence seized by federal officers from his apartment pursuant to a search warrant. Brown argues that the district court erred in failing to exclude the evidence seized as violative of the Fourth Amendment because probable cause did not exist to support the issuance of the search warrant and the officers did not rely upon the search warrant in good faith. We find, however, that the federal officers conducting the search properly acted in "good faith" reliance on the search warrant as enunciated in United States v. Leon, 468 U.S. 897 (1984), and its progeny. Accordingly, we conclude that the district court properly admitted evidence seized at the apartment and affirm Brown's conviction.
 
 I.
 
 2
 During March and April of 1993, officers of the United States Park Police conducted an investigation of an organization, allegedly headed by Brown, that was distributing heroin in and around Washington, D.C. During the investigation, the officers gathered information that focused their attention on a residence at 5325 85th Avenue, Apartment 201, New Carrollton, Maryland (the apartment). This information indicated that Brown lived at the apartment and was using it as a site for processing the heroin.
 
 
 3
 On April 6, 1993, Officer Arthur Jacobsen, an investigator with the narcotics/vice division of the United States Park Police, submitted to a federal magistrate judge a six-page affidavit in support of an application for a search warrant for the apartment. The affidavit detailed an extensive heroin conspiracy that, while operating primarily within the city limits of Washington, D.C., extended to the apartment, where the heroin was allegedly stored and packaged.
 
 
 4
 On April 8, 1993, the magistrate judge authorized a search of the apartment based upon Officer Jacobsen's affidavit. On April 9, 1993, federal officers executed the search warrant. Among other things, the officers seized approximately 89 grams of heroin, numerous items of narcotics cutting and packaging material, a triple beam balance scale, Quinine HCL and Inositol, and photographs of Brown with his associates. On that same day, the officers arrested Brown along with Michael William Robinson and Kimothy Black Padgett.
 
 
 5
 Brown filed a pretrial motion with the district court to suppress the evidence seized at the apartment on the grounds that there was no probable cause to support the issuance of the search warrant and the officers did not rely in "good faith" upon that search warrant. On August 31, 1993, after conducting an evidentiary hearing, the district court denied Brown's motion. The district court found not only that there was probable cause to support issuing the warrant, but also, in the alternative, that the officers properly relied upon the warrant in good faith.
 
 
 6
 Following the district court's denial, Brown entered into a conditional plea with the Government which the district court approved, pursuant to Rule 11(a)(2) of the Federal Rules of Criminal Procedure.[1] Under the terms of the conditional plea, Brown pled guilty to possession with intent to distribute approximately 88.936 grams of heroin in violation of 21 U.S.C. Sec. 841(a)(1), but specifically reserved his right to appeal the district court's denial of his motion to suppress the evidence seized from the apartment.
 
 II.
 
 7
 In reviewing a district court's denial of a motion to suppress evidence seized pursuant to a search warrant, we perform a two-step analysis of the district court's decision: (1) whether the "good faith" exception to the exclusionary rule, as enunciated in United States v. Leon and its progeny, applies to this case; and (2) whether a neutral and detached magistrate issued the search warrant, which contains a particular description of the place to be searched and things to be seized, based upon probable cause and supported by oath. United States v. Clutchette, 24 F.3d 577, 579 (4th Cir.1994). We will not disturb the district court's finding that there was good faith reliance on the search warrant unless it is clearly erroneous. United States v. Lalor, 996 F.2d 1578, 1584 (4th Cir.1993).
 
 
 8
 Where the appellant challenges the probable cause and good faith findings of the district court, we ordinarily turn first to the good faith exception under Leon unless the case involves the resolution of a novel question of law necessary to the future guidance of police officers and magistrates. United States v. Legg, 18 F.3d 240, 243 (4th Cir.) (under Leon, reviewing court may proceed to good faith exception without first deciding whether warrant supported by probable cause), cert. denied, 114 S.Ct. 2761 (1994); United States v. Satterwhite, 980 F.2d 317, 320 (5th Cir.1992) (citing Illinois v. Gates, 462 U.S. 213, 264 (1983) (White, J., concurring)); United States v. Craig, 861 F.2d 818, 820 (5th Cir.1988) ("Principles of judicial restraint and precedent dictate that, in most cases, we should not reach the probable cause issue if ... the good-faith exception of Leon will resolve the matter."). Because our analysis of the probable cause issue would consist of a straightforward application of numerous Fourth Circuit holdings concerning the required nexus between drug activity and a particular residence, we turn first to the good faith issue. Lalor, 996 F.2d at 1580-84 (discussing the necessary nexus between drug activity and residence of suspect); United States v. Williams, 974 F.2d 480, 481-82 (4th Cir.1992) (same); United States v. Anderson, 851 F.2d 727, 729-30 & n. 1 (4th Cir.1988) (same), cert. denied, 488 U.S. 1031 (1989); United States v. Wylie, 705 F.2d 1388, 1391-92 (4th Cir.1983) (same).
 
 
 9
 In Leon, the Supreme Court concisely stated the essential contours of the good faith exception to the exclusionary rule:
 
 
 10
 We conclude that the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion.... Nevertheless, the officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable, and it is clear that in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued.
 
 
 11
 Leon, 468 U.S. at 922-23 (citations and footnotes omitted). As we have recently summarized, the Supreme Court continued in that case to outline four situations in which the officers' reliance on a search warrant would not be reasonable:
 
 
 12
 (1) the magistrate was misled by information in the affidavit that the officer "knew was false or would have known was false except for his reckless disregard of the truth"; (2) the magistrate "wholly abandoned his judicial role ...."; (3) the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) "depending on the circumstances of the particular case, a warrant may be so facially deficient ... that the officers cannot reasonably presume it to be valid."
 
 
 13
 Clutchette, 24 F.3d at 581 (quoting Leon, 468 U.S. at 923). Brown maintains that the first and third situations stated above are applicable here.
 
 
 14
 First, Brown argues that Leon is inapplicable here because the affidavit supporting the search was so lacking in indicia of probable cause that official belief in its existence would be entirely unreason able. We disagree. In Lalor, 996 F.2d at 1583-84, this Court confronted a similar argument concerning the objective reasonableness of an affidavit submitted in support of an application for a search warrant in which the officers, as here, were attempting to draw a connection between drug activity and the residence of a particular individual involved in that activity. The affidavit in support of the search warrant in Lalor was "devoid of any basis from which the magistrate could infer that evidence of drug activity would be found" at the residence because it failed to connect drug sales in one part of the city with possible drug activity taking place at the residence. Id. at 1582 (emphasis added). We, nevertheless, concluded in that case that the warrant was "not so lacking in probable cause that the officers' reliance upon it was objectively unreasonable." Id. at 1583.
 
 
 15
 The affidavit in this case provides even stronger support for the objectively reasonable reliance of the officers than that present in Lalor. First, the affidavit contains information from a confidential source--an admitted heroin user and seller who worked for Brown, according to the affidavit--connecting Brown's heroin distribution network with Brown's apartment. Most importantly, according to Jacobsen's affidavit: "[the confidential source] states that Torre Brown lives at 5325 85th Ave, # 201, New Carrollton, MD where Brown stores and cut[s] heroin." (J.A. at 17.) The affidavit further contains information that the confidential informant "has spoken to Brown, who stated in conversation, that Brown cuts heroin daily for sale at his residence on 85th [A]ve and then drives to 5002 Hunt Pl[.] for storage." Id. Second, Jacobsen provided other information substantiating certain statements made by the informants--particularly the confidential informant--concerning the apartment. For instance, one extended passage of the affidavit suggests a connection between Brown and a number of the vehicles and locations used for drug distribution:
 
 
 16
 On 4-6-93 police surveillance continued in the morning hours. BROWN was observed exiting 5325 85th Ave and enter[ing] the 300ZX. BROWN left the apartment complex and drove to 5002 Hunt Place NE. Investigators observed Brown enter 5002 Hunt Place and apartment # 13. After a period of time BROWN leaves the apartment and drives to Division and Burroughs Ave. Later, Brown returns to 5002 Hunt Pl with a second person. Later these subjects leave 5002 Hunt Pl., go to the area of 58th and Burroughs where the passenger exits and Brown continues on to 61st and Clay where he parks and exits the vehicle.
 
 
 17
 (J.A. at 16.) The affidavit further states that "[i]nvestigation revealed that Brown lives at 5325 85th # 201." Id.[2] After a thorough review of the record, we cannot say that it was objectively unreasonable for the investigating officers to rely on the affidavit.
 
 
 18
 Next, Brown argues that the issuing magistrate judge was misled by information that the affiant knew was false, or would have known was false if not for a reckless disregard of the truth. Franks v. Delaware, 438 U.S. 154 (1978); see also United States v. Jones, 913 F.2d 174, 176 (4th Cir.1990), cert. denied, 498 U.S. 1052 (1991). Specifically, Brown argues that the affiant officer permitted inclusion of inconsistent statements and false impressions in the affidavit and concealed or overstated other information concerning the confidential informant. The district court, however, addressed this issue extensively after conducting a suppression hearing that included the testimony of numerous officers related to the investigation. In finding that the affidavit did not violate Franks, the district court observed, in part:
 
 
 19
 Let me address the alleged falsifications to begin with. I mean, the flat out falsifications. To the extent that this requires credibility finding, I find that the Officers are telling the truth [concerning] their observations[,] particularly on April 6th[,] of the defendant and [that a defense witness who testified at the suppression hearing] and the defendant are not telling the truth.
 
 
 20
 * * * *
 
 
 21
 So, then I find no falsity. I credit the officers about their testimony about the observations. I credit their testimony that [the confidential informant] told them what they said [he] told them, in particular what Schmidt said they told them on the stand, which I find slopp[y,] but I do not find [a] reckless disregard of the truth and for these reasons I'm going to sustain the warrant.
 
 
 22
 (J.A. 192; 200.) As we have previously reasoned in a factually similar case: "Despite the nature of the informant's knowledge, there is no evidence that [the government agent] doubted[the informant's] credibility, and Franks requires only that the government affiant reasonably believe the allegations to be true." United States v. Chavez, 902 F.2d 259, 265 (4th Cir.1990) (citing Franks, 438 U.S. at 165). The reasoning and conclusion drawn in Chavez applies here with equal force. After a thorough review of the testimony presented at the suppression hearing, we conclude that the district court was not clearly erroneous in crediting the testimony of the federal officers and in rejecting Brown's Franks argument.
 
 
 23
 As none of the exceptions to Leon are applicable in this case, we agree with the district court that the officers objectively relied on the search warrant in "good faith" as enunciated in Leon. Our conclusion that the good faith exception to the exclusionary rule applies in this case obviates the need to consider whether probable cause supported the initial issuance of the search warrant.[3]
 
 III.
 
 24
 Accordingly, for the reasons stated above, we conclude that the district court did not commit reversible error in denying Brown's motion to suppress evidence gathered from the apartment and, therefore, affirm his conviction.[4]
 
 
 25
 AFFIRMED.
 
 MICHAEL, Circuit Judge, concurring:
 
 26
 I concur in the panel's conclusion that the officers relied on the search warrant in good faith and that the district court did not err in denying Brown's suppression motion. On this basis, I also concur in the panel's affirmance of Brown's conviction.
 
 
 27
 Unlike the panel majority, I would not skip a determination of whether probable cause supported the issuance of the search warrant.[1] We have "considerable discretion" to decide the probable cause question "before turning to the good-faith issue." United States v. Leon, 468 U.S. 896, 924-5 (1984). In my view two factors oblige us to consider probable cause in this case. First, I believe the district judge regarded the probable cause issue as a close one. He noted "sloppiness" in the preparation of the affidavit and questioned the reliability of the key informant. He criticized the magistrate judge for failing to ask the officer to provide the basis for his bald and unsupported assertion that "[i]nvestigation revealed that Brown lives at" the apartment for which the warrant was sought. In the end the district judge "sustain[ed] the warrant but not entirely happily." Second, I believe examining the affidavit and informing the police, the prosecutor[2] and the magistrate judge of their errors would provide them with useful guidance for the future. See Leon, 468 U.S. at 925.
 
 
 28
 The Fourth Amendment ordains that "no Warrants shall issue but upon probable cause supported by Oath or affirmation." The Fourth Amendment enforcement duties of the judicial officer issuing the warrant and the reviewing court are set forth in Illinois v. Gates:
 
 
 29
 [W]e reaffirm the totality-of-the-circumstances analysis that traditionally has informed probable-cause determinations.... The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed.
 
 
 30
 462 U.S. 213, 238-39 (1983) (citations omitted).
 
 
 31
 For the reasons that follow, I do not believe that Officer Jacobsen's affidavit provided a substantial basis for the magistrate judge to conclude that probable cause existed for a warrant to search Apartment No. 201 at 5325 85th Avenue, New Carrollton, Maryland (the Maryland Apartment).
 
 
 32
 The six-page, single-spaced affidavit barely mentions the Maryland Apartment. The affidavit is more notable for linking Brown to criminal activity at places other than the one to be searched, i.e., the Maryland Apartment.
 
 
 33
 In his affidavit Officer Jacobsen, after detailing his experience as a narcotics investigator, described generally how a narcotics distribution organization works. Then Jacobsen described the Brown heroin trafficking organization, relying on police surveillance, undercover purchases and data from an informant ("S-1"). The problem is that none of this dealt with the Maryland Apartment, the target of the warrant. Instead this information detailed (i) Brown's activities at 63rd and Clay in Washington, D.C., where the heroin was distributed and sold on the street and (ii) Brown's travels between the distribution area and 5002 Hunt Place, N.E., Apt. 13, in Washington, D.C. (the D.C. Apartment). For example, in a three-day period police surveillance teams saw Brown make at least four trips between the distribution area and the D.C. Apartment. Indeed, the D.C. Apartment address was on Brown's driver's license. The fair implication was that the D.C. Apartment was Brown's "stash location." All of this information provided probable cause for belief that Brown was trafficking in drugs and that a nexus existed between his criminal activity and the D.C. Apartment. But none of this information implicated the Maryland Apartment, the object of the warrant.
 
 
 34
 Only four short statements in the long affidavit provided an arguable link between Brown's criminal activity and the Maryland Apartment. They are: (1) An officer (in another investigation) once saw "Brown's 300ZX ... parked at" the street address of the complex in which the Maryland Apartment was a unit.
 
 
 35
 (2) "Investigation revealed that Brown lives at [the Maryland Apartment]."
 
 
 36
 (3) On the morning of April 6, 1993, police saw Brown leaving the complex where the Maryland Apartment was located. He got in his car and drove to the D.C. Apartment.
 
 
 37
 (4) A confidential informant, "S-2," said that Brown told him that he (Brown) "cuts heroin daily for sale at his residence on 85th [A]ve...."
 
 
 38
 I now examine the four statements to see if they provided a "substantial basis" for the magistrate judge to find probable cause. Gates, 462 U.S. at 238-39.
 
 
 39
 Statements (1) and (3) may be reviewed together: once, in another investigation, Brown's car was seen parked at the multi-unit complex which included the Maryland Apartment; and on another day Brown was seen leaving the complex and getting into his car. Neither of these statements tie Brown to or even identify the Maryland Apartment itself, i.e., the particular apartment to be searched, No. 201. In short, they do not provide a "substantial basis" for concluding that there was criminal activity at the Maryland Apartment.
 
 
 40
 Statement (2) says that "[i]nvestigation revealed that Brown lives at [the Maryland Apartment]." This conclusory statement is essentially isolated by its placement in the midst of unrelated topics. No basis for the statement is given, nor are any facts provided to support it. The magistrate judge slipped up in not requiring that its basis be included in the affidavit. As the statement stood, it did not provide a "substantial basis" for concluding that Brown lived in the Maryland Apartment.
 
 
 41
 Statement (4) reports that confidential informant S-2 said that Brown told him (S-2) that he (Brown) "cuts heroin daily for sale at his residence on 85th [A]ve," i.e., the Maryland Apartment. Officer Jacobsen's affidavit did not give the magistrate judge any basis for concluding that S-2 was truthful or reliable. See Gates, 462 U.S. at 238. According to the affidavit, S-2, a new informant, was "an admitted heroin user and [street-level] seller." S-2 claimed that the basis for his information was a statement from Brown himself. But S-2's veracity was undercut by two other statements in the affidavit. First, Officer Jacobsen, speaking as an expert narcotics investigator, said that the location of the stash is "only known to upper echelon members of the [drug trafficking] operation." Indeed, the district judge questioned whether the organization head would tell a low-level street dealer and heroin addict where the stash was located. Second, in an earlier paragraph the affidavit implied that Brown's stash was located in the D.C. Apartment.
 
 
 42
 The affidavit does not provide a sufficient link between Brown's drug trafficking and the Maryland Apartment. United States v. Lalor, 996 F.2d 1578, 1583-84 (4th Cir.), cert. denied, --- U.S. ---- (1993). There was not a substantial basis for the magistrate judge to conclude that Brown lived in the Maryland Apartment or that contraband would be found there. Therefore, I would hold that the warrant was issued without a showing of probable cause. Having said that, I reiterate my agreement with the panel majority that the fruits of the search of the Maryland Apartment are saved because the officers acted in good faith.
 
 
 
 [1]
 Fed.R.Cr.P. 11(a)(2) states:
 With the approval of the court and the consent of the government, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right, on appeal from the judgment, to review of the adverse determination of any specified pretrial motion. A defendant who prevails on appeal shall be allowed to withdraw the plea.
 
 
 [2]
 Furthermore, in Lalor, although we held there was no probable cause to support issuance of the warrant, we noted that disagreement in that case between the judges below (the issuing magistrate judge and the district court judge) and this Court as to the existence of probable cause indicated that the officers' reliance on the submitted affidavit in that case was objectively reasonable. Id. at 1583 (citing Leon, 468 U.S. at 926). In this case, the magistrate judge's issuance of the warrant and the district court's finding of probable cause in support of the warrant likewise indicate that there was objectively reasonable reliance by the officers on the submitted affidavit
 
 
 [3]
 Although we expressly need not find whether probable cause supported the issuance of the warrant in this case, we do believe it appropriate to comment briefly on what factors make this rather straightforward case closer--as to a probable cause determination--than it otherwise would have to be. Although Officer Jacobsen submitted a lengthy six-page (single-spaced) affidavit in support of a search of the apartment, the overwhelming majority of the information was concerned with the drug activity in Washington, D.C., instead of the necessary information con necting that drug activity with Brown's apartment. The district court correctly looked past the mere length of the affidavit and correctly focused on potential problems with the generality of statements concerning the nexus between the drug activity and the apartment. Regardless of whether the various isolated statements together constituted probable cause, the point remains that officers seeking a search warrant should not simply draft lengthy affidavits in the hope that a court will favorably add up the statements to find probable cause. Instead, officers must focus directly on that subject for which they must offer probable cause--in this case, the nexus between the drug activity and the apartment
 
 
 [4]
 We note that at sentencing the district court concluded that Brown was a "career offender" pursuant to U.S.S.G. Sec. 4B1.1 (Nov.1993) and imposed a sentence of 151 months under the Guidelines. In his brief supporting his appeal, Brown maintains that the district court incorrectly used his prior state court convictions, as opposed to federal convictions, in determining that he had committed two prior felony convictions under Sec. 4B1.1. At oral argument, counsel for Brown conceded that the Fourth Circuit recently resolved this issue against Brown's position (in a case with coincidentally the same caption as the present appeal but with a different defendant): United States v. Brown, 23 F.3d 839, 841 (4th Cir.1994)
 
 
 [1]
 The majority opinion recognizes "potential problems with the generality of statements [in the affidavit] concerning the nexus between the drug activity and the apartment" to be searched. Ante at note 3. I write separately because I believe that, on our way to finding good faith, we should actually say that probable cause was lacking
 
 
 [2]
 An Assistant United States Attorney "reviewed [the affidavit] for legal sufficiency" before it was presented to the magistrate judge