UNITED STATES of America,
Plaintiff–Appellee,

v.

John LALOR, Defendant–Appellant.

No. 92–5426.

United States Court of Appeals,
Fourth Circuit.

Argued March 5, 1993.

Decided June 11, 1993.

Denise Charlotte Barrett, Federal Public Defender's Office, Baltimore, MD, argued (Anthony R. Gallagher, Acting Federal Public Defender, Denise Benvenga, Asst. Federal Public Defender, on brief), for defendant-appellant.

Bonnie S. Greenberg, Asst. U.S. Atty., Baltimore, MD, argued (Richard D. Bennett, U.S. Atty., on brief), for plaintiff-appellee.

Before ERVIN, Chief Judge, PHILLIPS, Circuit Judge, and RESTANI, Judge, United States Court of International Trade, sitting by designation.

## OPINION

RESTANI, Judge:

John Lalor was arrested on January 30, 1990, following execution of a search warrant at his residence. He was charged with possession with intent to distribute cocaine, 21 U.S.C. § 841(a)(1), and use of a firearm in relation to a drug trafficking offense, 18 U.S.C. § 924(c)(1). On April 30, 1991, after a hearing, the district court denied his motion to suppress evidence obtained during the search. On May 6, 1991, Lalor did not appear for trial, and in a superseding indictment was charged with an additional count for failure to appear, 18 U.S.C. § 3146(a)(1). On March 9, 1992, he entered a guilty plea, conditioned upon preserving the right to appeal from denial of his motion to suppress. This appeal followed.

## I.

### BACKGROUND

#### 1. The Search Warrant Affidavit

The search warrant was issued by a state magistrate on January 30, 1990, based on the affidavit of Baltimore City police officer, Gary McLhinney. The warrant authorizes a search of the premises at 1572 Waverly Way for "cocaine, narcotics, narcotic paraphernalia, U.S. currency, related objects and personal papers."

The affidavit contains information from two confidential informants. The first informant gave information to the police during the last week of November 1989. He said that a man named "Jamaican John" was selling cocaine in the area of Northern Parkway and Loch Raven Boulevard. Jamaican John's mode of operation was to use a personal pager, then meet the buyer on East Northern Parkway, where the sales occurred. The informant believed that Jamai-

can John lived on Waverly Way and drove a blue Dodge Daytona, with the Maryland tag, "Thumpur." The second informant gave information during the third week of December 1989. The informant confirmed that Jamaican John sold cocaine at Northern Parkway and Loch Raven Boulevard, and said he had purchased cocaine from him on numerous occasions. He said that John lived with his girlfriend in the Loch Raven Apartments, where Waverly Way is located.[1]

Other information in the affidavit substantiated certain statements made by the informants. On December 1, 1989, McLhinney saw a blue Dodge Daytona with the tag "Thumpur" parked in the 1600 block of Waverly Way.[2] On January 6, 1990, a Baltimore City police officer informed McLhinney that one day earlier she had stopped a blue Dodge Daytona with a Maryland license plate, "Thumpur." The driver identified himself as John Lalor of 1572 Waverly Way. The police officer cited Lalor for several moving violations, seized the license plate, and towed the vehicle.[3] During the third week of January 1990, McLhinney saw the blue Dodge Daytona, with temporary Maryland tags, parked in the 1600 block of Waverly Way.

The affidavit also states that 1572 Waverly Way was rented to a woman, whose boyfriend, Jerry Jones, was listed as an apartment resident. Jones' date of birth was the same as Lalor's. McLhinney was informed by an officer in the drug enforcement section that John Lalor is also known as Jamaican John, and that the officer was familiar with Lalor from a previous investigation. On January 29, 1990, McLhinney learned that Lalor had been arrested five days earlier for possession of a handgun and possession with intent to distribute cocaine. When arrested, Lalor gave his address as 1509 Ramblewood

Road. A review of Lalor's arrest record showed an additional arrest in 1989 for cocaine possession.

### 2. Execution of the Search Warrant

On January 30, 1990, Baltimore City police officers executed the search warrant at 1572 Waverly Way. The police did not attempt a peaceful entry, ostensibly because they feared for their safety and were concerned about destruction of evidence. Instead, the officers broke down the door with a battering ram, at the same time, shouting, "police, search warrant." As a result of the search, cocaine, a weapon, plastic sandwich bags and a significant amount of cash were seized.

### 3. Motion to Suppress

After a hearing, the district judge denied the motion to suppress, finding that the warrant was based on probable cause, or, in the alternative, that an officer could rely in good faith on the warrant. The judge also held that the no-knock entry was reasonable under the Fourth Amendment.

### II.

### DISCUSSION

### 1. Search Warrant

■ A magistrate presented with a search warrant application must

make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit ..., including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983).[4] Suffi-

---

1. The affidavit was written in the present tense, suggesting that the activity was ongoing, at least at the time the information was given.

2. The car was registered to a woman who lived at 911 Ramblebrook Road, an address that has no connection to any other information in the affidavit.

3. The officer also informed McLhinney that Lalor was verbally abusive. This information was not contained in the affidavit.

4. The issue in *Gates* was whether a search warrant based on a partially corroborated anonymous tip had been properly issued. In upholding the search, the Supreme Court abandoned the "two-pronged test" for assessing the reliability of an informant's tip (*see Aguilar v. Texas,* 378 U.S. 108, 114, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States,* 393 U.S. 410, 416, 89 S.Ct. 584, 589, 21 L.Ed.2d 637 (1969) (requiring disclosure in affidavit of circumstances indicating informant's (1) reliability

cient information must be presented to the magistrate to allow for the exercise of independent judgment; the magistrate cannot simply ratify the conclusions of others. *Id.* at 239, 103 S.Ct. at 2333.

■ In reviewing a magistrate's probable cause determination, our task is to determine whether the magistrate had a substantial basis for the decision. *Id.* at 236, 103 S.Ct. at 2331. We accord the magistrate's decision "great deference," and will not invalidate a warrant "by interpreting [an] affidavi[t] in a hypertechnical, rather than a commonsense, manner." *Id.* at 236, 103 S.Ct. at 2331 (citations omitted).

### a. Informants' Reliability

■ Lalor argues that the affidavit did not state the basis of the informants' knowledge, and the magistrate had no means of assessing their reliability. An important factor in determining whether an informant's report establishes probable cause is the degree to which it is corroborated. *Id.* at 241, 103 S.Ct. at 2334; *United States v. Miller*, 925 F.2d 695, 698 (4th Cir.), *cert. denied*, ——— U.S. ———, 112 S.Ct. 111, 116 L.Ed.2d 80 (1991). Although the informant's veracity, reliability and basis of knowledge are relevant, they are no longer independent requirements. *Gates*, 462 U.S. at 230, 103 S.Ct. at 2328.

■ Here, one of the informants stated that she or he had purchased cocaine from Lalor on numerous occasions. Thus, the foundation for this individual's knowledge was known. In addition, both informants supplied fairly specific facts about Lalor's alias, address, and the area in which he operated. One informant described Lalor's car. Information from each informant was corroborated by information from the other, as well as by independent police investigation. McLhinney's observations, and reports from other officers, confirmed these details, and revealed a recent arrest for cocaine possession.

Lalor argues that police corroboration in this case was not meaningful because it concerned only innocent facts, and no attempt was made to verify allegations of criminal activity. In *Gates*, the Supreme Court rejected a similar argument. There, the Illinois Supreme Court held that police corroboration of innocent activity did not support a finding of probable cause. *Gates*, 462 U.S. at 243 n. 13, 103 S.Ct. at 2335 n. 13. The Supreme Court reversed, noting that:

> probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.... [I]nnocent behavior frequently will provide the basis for a showing of probable cause; to require otherwise would be to *sub silentio* impose a drastically more rigorous definition of probable cause than the security of our citizens demands.

*Id.; see also United States v. McCraw*, 920 F.2d 224, 228 (4th Cir.1990) (probable cause to arrest). Corroboration of apparently innocent details of an informant's report tends to indicate that other aspects of the report are also correct. *Gates*, 462 U.S. at 244, 103 S.Ct. at 2335 ("[A]n informant [who] is right about some things ... [is] more probably right about other facts.") (quoting *Spinelli*, 393 U.S. at 427, 89 S.Ct. at 594 (White, J., concurring)); *see also Alabama v. White*, 496 U.S. 325, 331, 110 S.Ct. 2412, 2416–17, 110 L.Ed.2d 301 (1990) (same). In this case, confirmation of Lalor's address, vehicle and alias gives credence to the allegations of criminal activity. *See White*, 496 U.S. at 332, 110 S.Ct. at 2417. In any event, Lalor's arrest for cocaine possession, just five days before the warrant was issued, is verification of his involvement in drug activity, and in combination with police corroboration of other details in the informants' tips, provides a substantial basis for finding the informants reliable.[5]

### b. Time Frame

■ Lalor argues that the affidavit fails to establish present probable cause. Specifical-

---

or credibility and (2) basis of knowledge)), in favor of a totality of the circumstances approach. *Gates*, 462 U.S. at 238, 103 S.Ct. at 2332.

5. In *Gates* and *White*, the informants' tips consisted of predictions of the defendants' future behavior. The police were able to corroborate

the tips by conducting surveillance and confirming that the predictions became a reality. *See White*, 496 U.S. at 332, 110 S.Ct. at 2417; *Gates*, 462 U.S. at 245, 103 S.Ct. at 2335. In this case, the tips and corroborative efforts by the police are not of the same nature as in *Gates* and *White*, but contrary to Lalor's argument, the distinction

ly, he claims that the informants did not state the time during which Lalor was engaged in drug activity, nor was there evidence that Lalor resided at 1572 Waverly Way at the time the warrant was executed.

■ The informants' reports omit any reference to the time period during which the drug sales occurred. The affidavit is written in the present tense, suggesting that the activity is ongoing; nevertheless, a time frame should have been disclosed. This court has already cautioned the police about the need to specify time periods in warrant applications. *See United States v. Anderson,* 851 F.2d 727, 729–30 & n. 1 (4th Cir.1988), *cert. denied,* 488 U.S. 1031, 109 S.Ct. 841, 102 L.Ed.2d 973 (1989). In this case, however, where Lalor was arrested for cocaine possession just five days prior to issuance of the warrant, the magistrate could reasonably infer that the drug activity was ongoing.

As for the evidence that Lalor resided at 1572 Waverly Way, no staleness problem exists. Information from one informant and police investigation indicated that Lalor lived at 1572 Waverly Way in December 1989 and January 1990. When stopped by a police officer on January 6, 1990, three weeks prior to the search, Lalor gave his address as 1572 Waverly Way. Admittedly, when arrested on January 24, 1990, Lalor gave another address, but at that time he had greater motivation to conceal his address.

### c. Nexus

■ Lalor argues that there is no probable cause to connect the drug activity to 1572 Waverly Way.

At the outset, it is not clear that this issue was properly raised in the district court; the transcript suggests that Lalor's attorney raised it only insofar as it related to staleness. Nevertheless, at oral argument before this court, the attorney for the government stated that the issue had been raised, albeit ambiguously, so it will be addressed.

■ In determining whether a search warrant is supported by probable cause, the crucial element is not whether the target of the search is suspected of a crime, but whether it is reasonable to believe that the items to be seized will be found in the place to be searched. *Zurcher v. Stanford Daily,* 436 U.S. 547, 556 & n. 6, 98 S.Ct. 1970, 1976–77 & n. 6, 56 L.Ed.2d 525 (1978). In *Anderson,* 851 F.2d 727, this court adopted the rule that "the nexus between the place to be searched and the items to be seized may be established by the nature of the item and the normal inferences of where one would likely keep such evidence." *Id.* at 729. The court held that probable cause can be inferred from the circumstances, and a warrant is not invalid for failure to produce direct evidence that the items to be seized will be found at a particular location. *See id.* (reasonable to infer that pistol and silencer would be found at defendant's residence).

The court finds the affidavit is devoid of any basis from which the magistrate could infer that evidence of drug activity would be found at 1572 Waverly Way. The affidavit does not describe circumstances that indicate such evidence was likely to be stored at Lalor's residence. *See United States v. Sua-*

---

is not significant. The Supreme Court does not require any specific method of police corroboration (*Miller,* 925 F.2d at 699), and in adopting the "totality of the circumstances" test, the Court specifically abandoned any rigid formulations, in favor of a flexible approach. *See id.* In addition, the cases on which Lalor relies, all of which are from other jurisdictions, do not involve the same degree of corroboration as in this case. *See United States v. Gibson,* 928 F.2d 250, 253 (8th Cir.1991) (warrant affidavit insufficient when only innocent details such as defendant's residence and description were corroborated; upholding search based on good faith exception); *United States v. Little,* 735

F.2d 1049, 1055 (8th Cir.) (evidence suppressed when informants' tips were not corroborated), *reh'g granted and opinion vacated sub nom., United States v. Sager,* 743 F.2d 1261 (8th Cir.1984) (upholding search based on good faith exception); *United States v. Kolodziej,* 712 F.2d 975, 977–78 (5th Cir.1983) (evidence suppressed when only verification of information from two informants was that tips corroborated one another and were against penal interests). Finally, to the extent that *State v. Thompson,* 369 N.W.2d 363, 369–70 (N.D. 1985), on which Lalor relies, seems to require verification of predictions of future behavior, we find that it is contrary to Supreme Court precedent.

*rez,* 906 F.2d 977, 984–85 (4th Cir.1990) (residential search upheld based on officer's reasoned belief that evidence of drug activity would be found at residence), *cert. denied sub nom., Lucero–Romero v. United States,* 498 U.S. 1070, 111 S.Ct. 790, 112 L.Ed.2d 852 (1991). Nor does the affidavit explain the geographic relationship between the area where the drug sales occurred and 1572 Waverly Way. Although the magistrate might have been able to draw an inference from the proximity of the drug sales to Lalor's residence *(see United States v. Johnson,* 726 F.2d 1018, 1021 (4th Cir.1984) (magistrate can take judicial notice of distances)), the record contains no evidence concerning this distance.[6] In short, the magistrate was given no basis for making a judgment concerning this aspect of probable cause.

In this and other circuits, residential searches have been upheld only where some information links the criminal activity to the defendant's residence. *United States v. Williams,* 974 F.2d 480, 481–82 (4th Cir.1992) (totality of facts establishes fair probability that drug paraphernalia will be found in drug dealer's motel room; three weeks before motel search, police found drug paraphernalia in defendant's residence); *United States v. Corral,* 970 F.2d 719, 728 (10th Cir.1992) (defendant's return to residence after negotiating purchase price but before actual exchange provides reasonable probability that cocaine was stored in residence); *United States v. Hawkins,* 788 F.2d 200, 204 (4th Cir.) (surveillance connected drug activity to defendant's residence), *cert. denied,* 479 U.S. 850, 107 S.Ct. 176, 93 L.Ed.2d 112 (1986); *United States v. Wylie,* 705 F.2d 1388, 1391–92 (4th Cir.1983) (finding indirect link between drug activity and residence; distinguishing cases where no link found). Where no evidence connects the drug activity to the residence, the courts have found the warrant defective. *United States v. Ramos,* 923 F.2d 1346, 1352 (9th Cir.1991) (finding no probable cause where surveillance did not lead to facts making it likely that items officers sought were

located in apartment); *United States v. Stout,* 641 F.Supp. 1074, 1078–79 (N.D.Cal. 1986) (arrest with cocaine does not provide probable cause to search residence). Accordingly, the warrant in this case is invalid, and the search will be insulated only if an exception to the warrant requirement applies.

### d. Good Faith Exception

■ Under the good faith exception to the warrant requirement, evidence obtained from an invalidated search warrant will be suppressed only if "the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *United States v. Leon,* 468 U.S. 897, 926, 104 S.Ct. 3405, 3422, 82 L.Ed.2d 677 (1984). Lalor claims the exception does not apply in this case.

■ As stated above, the warrant application is deficient because it fails to establish a nexus between the drug activity and the location that was searched. Nevertheless, the warrant is not so lacking in probable cause that the officers' reliance upon it was objectively unreasonable. Indeed, two judicial officers have determined that the affidavit provided probable cause to search. *See Leon,* 468 U.S. at 926, 104 S.Ct. at 3422 (disagreement among judges as to existence of probable cause indicates that officer's reliance on affidavit is objectively reasonable).

Lalor argues that the affidavit was prepared without careful investigation and disclosure of all the facts. Suppression of evidence is appropriate if the magistrate was misled by information that the affiant knew was false, or would have known was false if not for a reckless disregard for the truth. *Id.* at 923, 104 S.Ct. at 3420–21 (citing *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)). Lalor concedes that no *Franks* violation exists. In-

---

**6.** This court is also unable to take judicial notice of this fact since at oral argument, neither attorney knew the distance between the two locations. In addition, the only possible basis in the affidavit for speculating about the distance is that

Lalor's apartment complex was called "Loch Raven"; however, the conclusion that the Loch Raven apartments are close to the particular location on Loch Raven Boulevard where the sales occurred is completely speculative.

stead, he argues that the affidavit includes misstatements of fact, which tended to increase the apparent strength of the evidence presented. The district court found that McLhinney did not prepare the affidavit in bad faith. This finding is not clearly erroneous, and will not be disturbed. *See United States v. Jones,* 913 F.2d 174, 176 (4th Cir. 1990), *cert. denied,* 498 U.S. 1052, 111 S.Ct. 766, 112 L.Ed.2d 785 (1991). The motion to suppress was properly denied.

### 2. Execution of Warrant

■■■ Lalor argues that the entry into 1572 Waverly Way, without a knock or announcement, was unreasonable under the Fourth Amendment.

■■■■ The lawfulness of an entry by state officers executing a search warrant is determined by reference to the Fourth Amendment reasonableness standard. *Mensh v. Dyer,* 956 F.2d 36, 40 (4th Cir. 1991); *Simons v. Montgomery County Police Officers,* 762 F.2d 30, 32 n. 1 (4th Cir.1985), *cert. denied,* 474 U.S. 1054, 106 S.Ct. 789, 88 L.Ed.2d 767 (1986). Under this standard, the so-called "knock and announce" rule, the police may use force to enter a premises only after stating their authority and purpose. *Miller v. United States,* 357 U.S. 301, 308, 78 S.Ct. 1190, 1195, 2 L.Ed.2d 1332 (1958); *see also* 18 U.S.C. § 3109 (1988) (codification of "knock and announce" rule). Knock and announce requirements vary with the circumstances of each case; failure to knock and announce may be excused by exigent circumstances. *Mensh,* 956 F.2d at 40; *Simons,* 762 F.2d at 32–33 & 32 n. 2. Exigent circumstances include the possibility of destruction of evidence and danger to entering officers. *United States v. Bonner,* 874 F.2d 822, 826 (D.C.Cir.1989); *see, e.g., United States v. Couser,* 732 F.2d 1207, 1208 (4th Cir.1984) (upholding no-knock entry to prevent destruction of evidence), *cert. denied,* 469 U.S. 1161, 105 S.Ct. 913, 83 L.Ed.2d 926 (1985); *but see United States v. Marts,* 986 F.2d

1216, 1218 (8th Cir.1993) (reasonable belief that firearms may be present is insufficient). Although this circuit and others have recognized that narcotics searches might present exigent circumstances (*see Bonner,* 874 F.2d at 824; *Couser,* 732 F.2d at 1208), at least one circuit has determined that a blanket rule permitting no-knock entries in narcotics cases is unjustifiable under the Fourth Amendment. *See United States v. Moore,* 956 F.2d 843, 850 (8th Cir.1992).

In this case, the district court's finding of exigent circumstances was based on concerns about safety and destruction of evidence. The evidence on the safety risk was that a weapon had been found when Lalor was arrested on January 24, 1990,[7] and in his prior encounter with the police on January 6, 1990, Lalor was belligerent and made derogatory remarks about the police. The district judge also relied on the general proposition that drugs and guns go together. The evidence concerning the risk of destruction of evidence was an assertion from McLhinney that the risk existed; the district judge's finding on this point was also based on the consideration that evidence of drug activity is quickly destroyed.

The evidence concerning the possibility that the drugs would be destroyed is insufficient. There is no support for the proposition that each and every narcotics search carries a risk that evidence will be destroyed. Such a rule would totally eviscerate the Fourth Amendment, and could easily be expanded to include searches for any item that is easily disposed of. In this case, the police had no particularized basis for their belief that evidence would be destroyed; in fact, they did not even know who was in the house at the time of the search.[8] Also, the evidence of the safety risk to the officers is not compelling; nevertheless, we cannot say that

---

7. We do not find it significant for purposes of this determination that the weapon was not found on Lalor's person.

8. As this court has already concluded, there was, in fact, no evidence to indicate that drugs would be found in the house at all.

 

the district judge's findings on this point are clearly erroneous. As the safety risk provides an independent ground for the no-knock entry, we find that the warrant was not executed in violation of the Fourth Amendment.

The district court's decision was not in error, and is hereby

*AFFIRMED.*