39 F.3d 1179
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Lloyd Lee WILLIAMS, Defendant-Appellant.
 No. 94-5190.
 United States Court of Appeals, Fourth Circuit.
 Argued September 30, 1994.
Decided October 27, 1994.
 
 1
 Appeal from the United States District Court for the Western District of Virginia, at Charlottesville. James H. Michael, Jr., District Judge. (CR-93-4)
 
 
 2
 Argued: Frederick T. Heblich, Jr., Parker, Mcelwain & Jacobs, P.C., Charlottesville, VA, for appellant.
 
 
 3
 Argued: Jean Barrett Hudson, Asst. U.S. Atty., Charlottesville, VA, for appellee.
 
 
 4
 On brief: Robert P. Crouch, Jr., U.S. Atty., Charlottesville, VA, for appellee.
 
 
 5
 W.D.Va.
 
 
 6
 AFFIRMED.
 
 
 7
 Before HAMILTON and LUTTIG, Circuit Judges, and MERHIGE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 
 OPINION
 PER CURIAM
 
 8
 After his motion to suppress evidence was denied, Lloyd Lee Williams entered a conditional plea of guilty to possession of cocaine with intent to distribute, 21 U.S.C. Sec. 841(a)(1), reserving for appeal his contention that his motion to suppress was wrongly denied. Fed.R.Crim.P. 11(a)(2). Williams now appeals that issue, contending that the evidence leading to his conviction was obtained during a search of his residence in violation of his Fourth Amendment rights. We now affirm.
 
 
 9
 * An investigation by seven or eight law enforcement officers in a joint federal and state narcotics unit (officers) resulted in the officers receiving information indicating that Williams was selling drugs from his residence in Charlottesville, Virginia. The officers received much of their information from confidential informants who dealt with the two lead investigating officers.
 
 
 10
 On the afternoon of December 3, 1992, a Virginia state magistrate issued a warrant to search Williams' residence.[1] Later that afternoon, the officers met and planned to execute the search warrant for Williams' residence without knocking on the door and announcing their authority and purpose in order to avoid the possibility of violence, the use of a weapon, flight, or the quick disposition of drugs.[2] That evening, at 10:30 p.m., about seven or eight police officers parked their cars a few hundred feet from Williams' residence and then approached it quietly. The two lead investigating officers saw a car in the driveway which an informant had told them would signify the presence of Williams. The officers split up and positioned themselves at the front and side entrances to the residence.
 
 
 11
 Next, the officers simultaneously made forced entries through both doors; yelling "police, search warrant," as they entered. Upon entry, the officers observed Williams and his roommate both lying on a sofa watching television. During the search, the officers found a shotgun in the bedroom of Williams' roommate, a set of scales, and a piece of glass with cocaine residue. The officers patted down both Williams and his roommate. They observed two large bulges in the pockets of the robe Williams was wearing. When Williams refused to consent to a search of his person, the officers obtained a search warrant and found a plastic bag containing 71.1 grams of cocaine and $6,602 in currency in the pockets of the robe.
 
 
 12
 On January 19, 1993, a federal grand jury sitting in the Western District of Virginia returned a one-count indictment charging Williams with possession of cocaine with intent to distribute, 21 U.S.C. Sec. 841(a)(1). On August 17, 1993, Williams filed a motion to suppress the evidence seized during the December 3, 1992 search of his residence, contending that the "no-knock" search was conducted in violation of his Fourth Amendment rights. On September 9, 1993, after a hearing on Williams' motion to suppress, the district court denied the motion. The district court held that the no-knock search was justified because exigent circumstances were present. Following the denial of his motion to suppress, Williams entered a conditional guilty plea, reserving the right to appeal the denial of his motion to suppress.
 
 
 13
 On February 28, 1994, the district court sentenced Williams to a term of imprisonment of thirty-six months. Williams noted a timely appeal.
 
 II
 
 14
 The Fourth Amendment requires that all searches be reasonable.[3] Therefore, the lawfulness of an entry by the police while executing a search warrant is determined by reference to the Fourth Amendment's reasonableness standard. United States v. Lalor, 996 F.2d 1578, 1584 (4th Cir.), cert. denied, 114 S.Ct. 485 (1993). This standard requires that the police "knock and announce" their authority and purpose before executing a search warrant. Id.; Miller v. United States, 357 U.S. 301, 308 (1958). However, the police are not required to knock and announce their authority and purpose if exigent circumstances exist. Lalor, 996 F.2d at 1584. "Exigent circumstances include the possibility of destruction of evidence and danger to entering officers." Id. We review the district court's findings of fact under the clearly erroneous standard and review whether those facts constitute exigent circumstances de novo. See United States v. Couser, 732 F.2d 1207, 1208 (4th Cir.1984), cert. denied, 469 U.S. 1161 (1985).
 
 
 15
 In this case, the district court's conclusion that exigent circumstances were present was premised on two independent rationales. First, the district court concluded that the evidence was sufficient to meet the danger to the officers exception to the knock and announce requirement. Second, and in the alternative, the district court concluded that the evidence was sufficient to meet the destruction of evidence exception to the knock and announce requirement. We need not decide whether the evidence was sufficient to meet the possibility of the destruction of evidence exception since the no-knock entry was unquestionably justified on the basis that execution of the search warrant presented a risk of profound danger to the officers' safety.
 
 
 16
 In this case, the district court found the following evidence supported the conclusion that exigent circumstances, in the form of danger to the officers, were present: (1) an informant had seen a shotgun in the back bedroom of Williams' residence forty-eight hours prior to the execution of the warrant; (2) the officers had information that Williams on occasion had armed bodyguards; (3) the officers knew that several years prior to the time of the issuance of the warrant, Williams and several others were involved in a violent confrontation in which they overpowered a Georgia state trooper, took his gun, and Williams escaped custody; and (4) a criminal records check conducted prior to the execution of the search warrant revealed that pursuant to the event just described, Williams had been charged with flight to escape.
 
 
 17
 In Lalor, officers executed a search warrant at Lalor's residence without knocking and announcing their authority and purpose. Prior to executing the warrant, the officers knew that a handgun had been found when Lalor was arrested six days prior and, in a prior encounter with the police officers, Lalor was belligerent and made derogatory remarks about them. Id. at 1584. We held this evidence of danger to the entering officers amounted to exigent circumstances and thus upheld the no-knock entry. Id. at 1584-85.
 
 
 18
 The facts in this case reveal that the entering officers were confronted with a more profound threat of danger to their safety than the entering officers in Lalor. Analogous to the officers finding a handgun when Lalor was arrested six days before the search of his residence, the officers in this case possessed reliable information that Williams had a shotgun at his residence during the forty-eight hours prior to the search. Also analogous to Lalor exhibiting hostility to the officers when they arrested him, the officers in this case knew that several years prior to the search, Williams was involved with others in violently overpowering a state trooper, stealing his weapon, and escaping custody. In addition, the entering officers also had information that Williams on occasion used armed bodyguards, and a criminal records check prior to the search revealed Williams had been charged with flight to escape, an indication that Williams might attempt to escape again and use violence if necessary. Because the safety risk confronted by the entering officers was considerably more threatening than the safety risk faced by the entering officers in Lalor, it is clear that the district court did not err in finding that exigent circumstances justified the no-knock entry into Williams' residence for the purpose of executing the search warrant.
 
 III
 
 19
 For the reasons stated herein, the judgment of the district court is affirmed.
 
 AFFIRMED
 
 
 [1]
 Williams does not contest the state magistrate's finding of probable cause to search, but only the legality of the "no-knock" entry
 
 
 [2]
 According to their plan, the officers would check to see if the door was unlocked; if it was, then the officers would enter the residence. If the door was locked, the officers decided they would break open the door and enter
 
 
 [3]
 The Fourth Amendment provides in relevant part: "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures shall not be violated...." U.S. Const. amend. IV