**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

No. 06-4922

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

TERRELL DONNELL RANDOLPH,

Defendant - Appellant.

_____

Appeal from the United States District Court for the Eastern
District of Virginia, at Richmond.   Robert E. Payne, Senior
District Judge.   (3:06-cr-00042-REP)

_____

Argued:  November 2, 2007          Decided:  January 17, 2008

_____

Before NIEMEYER and KING, Circuit Judges, and James A. BEATY, Jr.,
Chief United States District Judge for the Middle District of North
Carolina, sitting by designation.

_____

Affirmed by unpublished opinion.  Chief District Judge Beaty wrote
the opinion, in which Judge Niemeyer and Judge King joined.

_____

**ARGUED:** Robert James Wagner, Assistant Federal Public Defender,
OFFICE OF THE FEDERAL PUBLIC DEFENDER, Richmond, Virginia, for
Appellant.  Richard Daniel Cooke, Special Assistant United States
Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia,
for Appellee.  **ON BRIEF:** Michael S. Nachmanoff, Acting Federal
Public Defender, Alexandria, Virginia; Sapna Mirchandani, Research
and Writing Attorney, OFFICE OF THE FEDERAL PUBLIC DEFENDER,
Richmond, Virginia, for Appellant.  Chuck Rosenberg, United States
Attorney, Alexandria, Virginia; Olivia N. Hawkins, Assistant United

States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

BEATY, Chief District Judge:

Defendant Terrell D. Randolph appeals his conviction and sentence for conspiracy to distribute and possess with intent to distribute ecstasy, possession with intent to distribute ecstasy, and possession of a firearm by a convicted felon. On appeal, Defendant contends that the district court erred in denying his pretrial Motion to Suppress because the warrant authorizing the search of his apartment was not supported by probable cause and because the warrant application contained false or misleading information. Defendant also contends that the district court erred in enhancing his sentence for possession of a firearm "in connection with" another felony pursuant to section 2K2.1(b)(5) of the United States Sentencing Guidelines. Finding no error, we affirm.

I.

On December 8, 2005, law enforcement officers with the Central Virginia Narcotics Task Force obtained a warrant to search Defendant Randolph's apartment at 5600 Petoskey Avenue, Apartment E in Richmond, Virginia. Pursuant to the search, officers discovered 102 ecstasy pills, a loaded 9mm pistol, additional magazines and 9mm ammunition, and $3,635.34 in United States currency, all located in Defendant's bedroom. The loaded pistol was located in Defendant's dresser drawer, and additional

3

ammunition was located in another drawer in the same dresser. Additional loaded magazine clips were located on the headboard of the bed in Defendant's bedroom, and $3,000.00 in cash was located inside a pistol box in a safe under the bed. A second safe was sitting on another dresser in the bedroom and contained identification documents for Defendant, as well as 101 ecstasy pills and $635.34 in cash, including $400 that was identified by serial numbers as being money used earlier that day by law enforcement officers to purchase ecstasy from a third party, Mr. Jeffery B. Partin. An additional ecstasy pill was found on the floor in the bedroom.

Officers with the Central Virginia Narcotics Task Force and the Prince George County Police Department had been conducting an ongoing investigation of Mr. Jeffery Partin since December 2004. Officers arrested Mr. Partin on December 8, 2005 and then applied for the warrant to search Defendant Randolph's apartment. The search warrant application included an affidavit by Detective Shreves of the Central Virginia Narcotics Task Force recounting information regarding Defendant Randolph that was obtained on three primary occasions during the ongoing investigation of Mr. Partin. First, the affidavit noted that on May 18, 2005, a police operative attempted to purchase marijuana from Mr. Partin, and Mr. Partin told the operative that he could also obtain ecstasy and that his source of ecstasy was "outside" of the residence but did not have

4

any ecstasy at that time. According to the affidavit, officers observed a blue Chevrolet minivan outside the residence at that time, and a check of the minivan's license plate number with the Virginia Department of Motor Vehicles revealed that the minivan was registered to Terrell Donnell Randolph at 5600 Petoskey Avenue Apartment E in Richmond, Virginia. The affidavit further noted that officers were subsequently able to engage in a controlled purchase from Mr. Partin on June 23, 2005 of 5 pills that were confirmed to be 3,4-Methylenedioxyamphetamine ("MDA" or "ecstasy").

Second, the affidavit noted that on July 13, 2005, officers conducted a controlled purchase of 20 ecstasy pills from Mr. Partin, and after the purchase, Mr. Partin was followed to 5600 Petoskey Avenue, where Detective Bennett of the Prince George County Police Department observed Mr. Partin meeting with Defendant Randolph in a blue Chevrolet minivan in front of Apartment E. According to the affidavit, after meeting with Mr. Partin, Defendant Randolph entered Apartment E. The affidavit noted that Defendant Randolph was identified using a photograph obtained from the Virginia Department of Motor Vehicles.

Finally, the affidavit stated that on December 6, 2005, prior to the final controlled purchase, officers conducted surveillance of 5600 Petoskey Avenue, observed the blue Chevrolet minivan parked in front of Apartment E, and confirmed that the vehicle was still registered to Defendant Randolph. Then, on December 8, 2005,

5

police conducted another controlled purchase of 20 ecstasy pills from Mr. Partin using $500 in pre-recorded bills. After the purchase, Mr. Partin was again followed by surveillance officers directly to 5600 Petoskey Avenue and was observed entering the apartment complex. Mr. Partin left after a short time and was stopped by police, at which time he had only $100 of the pre-recorded bills remaining in his possession. The affidavit detailed all of this information in seven single-spaced paragraphs, and noted that each of the controlled purchases with Mr. Partin "was completed under direct police control and supervision." Based on this information, the search warrant was granted and officers conducted the search of Defendant's apartment on December 8, 2005.

After he was indicted, Defendant moved to suppress all of the evidence found at his apartment pursuant to the search, including the ecstasy, cash and handgun. At the Motion to Suppress hearing, the district court concluded that "the events of May 18, July 13 and December 8 all corroborate and reinforce each other and establish a pattern of behavior from which the magistrate could conclude that Randolph was Partin's source of ecstasy or at least that Apartment E, 5600 Petoskey Avenue was the situs of the contraband and the other things identified as items to be seized as well as the $400." The District Court further noted that "the magistrate had a substantial basis to support a finding of probable

cause to issue a search warrant for 5600 Petoskey Avenue, Apartment E." Therefore, the district court denied the motion to suppress.[1]

At the Motion to Suppress hearing before the district court, Defendant also argued that the affidavit falsely stated that after the controlled buy on December 8, Mr. Partin proceeded "directly" to 5600 Petoskey Avenue, when in fact Mr. Partin reentered the fast food restaurant where he had been eating in order to get his female companion before proceeding to 5600 Petoskey Avenue. However, with respect to this contention, the district court concluded that no hearing was warranted on this issue because Defendant had not made a preliminary showing that any information (or omission) in the affidavit was false, or that any information was included intentionally or recklessly or omitted with the intent to mislead.

Following a jury trial, Defendant was ultimately convicted of (I) conspiracy to distribute and possess with intent to distribute ecstasy in violation of 21 U.S.C. § 846; (ii) possession with intent to distribute ecstasy in violation of 21 U.S.C. § 841; and (iii) possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g). The jury found the Defendant not guilty of possession of a firearm in furtherance of a drug trafficking crime

---

[1]Because the district court concluded that a sufficient basis existed to support the issuance of the warrant, the district court did not reach the government's alternative argument that even if probable cause did not exist to support the issuance of the warrant, the challenged evidence would nevertheless be admissible pursuant to the "good faith" exception to the exclusionary rule. See United States v. Leon, 468 U.S. 897 (1984).

in violation of 18 U.S.C. § 924(c).  At sentencing, the district court nevertheless concluded that in calculating the advisory sentencing range under the United States Sentencing Guidelines, Defendant's sentence should be enhanced pursuant to section 2K2.1(b)(5) for possession of the firearm in connection with another felony offense.  Defendant was ultimately sentenced to imprisonment of 115 months on each count, with the sentences to run concurrently.

## II.

We consider first Defendant's challenge to the denial of his pretrial Motion to Suppress.  On this issue, Defendant contends that the affidavit presented in support of the search warrant application was not sufficient to establish probable cause to search his residence.  Defendant further contends that the affidavit included a false statement or omission.  Each of these contentions will be considered in turn.

## A.

Defendant contends first that the search of his apartment was unconstitutional because the search warrant was not supported by probable cause.  When a search is conducted pursuant to a warrant, the determination of probable cause by the magistrate who issued the warrant is entitled to "great deference."  <u>United States v.</u>

8

Blackwood, 913 F.2d 139 (4th Cir. 1990).  Thus, although our review of legal questions is *de novo*, we are "not to conduct a *de novo* determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant."  Massachusetts v. Upton, 466 U.S. 727, 728 (1984); see also Illinois v. Gates, 462 U.S. 213 (1983).  This already deferential review is further guided by the recognition that the probable cause standard "is a fluid concept - turning on the assessment of probabilities in particular factual contexts - not readily, or even usefully, reduced to a neat set of legal rules."  Gates, 462 U.S. at 232.  Moreover, "[b]ecause of the fourth amendment's strong preference for searches conducted pursuant to warrants, reviewing courts must resist the temptation to 'invalidate warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense, manner.'"  Blackwood, 913 F.2d at 142 (quoting Gates, 462 U.S. at 236 (internal quotations omitted)).

The magistrate reviewing the warrant application is required "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."  Gates, 462 U.S. at 238.  In addition, "the crucial element

9

is not whether the target of the search is suspected of a crime, but whether it is reasonable to believe that the items to be seized will be found in the place to be searched." United States v. Lalor, 996 F.2d 1578, 1582 (4th Cir. 1993). The nexus between the place to be searched and the items to be seized may be established by normal inferences given all of the circumstances. Id. This nexus may be established, for example, by information or surveillance of a residence linking the residence to drug activity, such that it is reasonable to believe that evidence of drug activity will be found at the residence. See id.

Based on the information presented in the affidavit in support of the warrant application in the present case, there was a substantial basis on which the magistrate could have found probable cause to believe that evidence of drug activity would be found in Defendant's apartment. Specifically, during a controlled buy of marijuana from Mr. Partin on May 18, 2005, Mr. Partin told a police operative that he could obtain ecstasy and that his source was "outside." Officers then observed a blue Chevrolet minivan outside Mr. Partin's residence at that time and checked the license plate with Department of Motor Vehicle records, which listed the van as being registered to Defendant at 5600 Petoskey Avenue Apartment E. Mr. Partin did in fact obtain ecstasy shortly thereafter, confirming that Mr. Partin could obtain ecstasy as he had claimed. In addition, after a controlled buy of ecstasy a few weeks later on

10

July 13, 2005, officers followed Mr. Partin to 5600 Petoskey Avenue and observed him meeting with Defendant in the blue minivan, thus confirming the link between Mr. Partin, the Defendant, and the minivan that was "outside" on May 18, 2005 when Mr. Partin referred to his "source." Officers further identified Defendant from a Department of Motor Vehicles photograph and observed him entering Apartment E after meeting with Mr. Partin, thereby providing an additional link of the probable drug trafficking activities between Defendant and Mr. Partin to Defendant's residence. Finally, officers initiated another controlled buy of ecstasy from Mr. Partin on December 8, 2005. Two days prior to this controlled buy, officers confirmed that the blue minivan was still registered to Defendant at the same address, and they also had observed the minivan parked outside of 5600 Petoskey Avenue Apartment E. After the controlled buy, officers again followed Mr. Partin to 5600 Petoskey Avenue. After Mr. Partin left the apartment complex, he was stopped, and had in his possession only $100 of the $500 given to him during the controlled buy. We hold that given the totality of the circumstances, and based on all of this information which was presented to the magistrate, there was a substantial basis from which the magistrate could conclude that Defendant was the "source" of ecstasy referred to during the controlled buy on May 18, that Mr. Partin returned to meet with Defendant at 5600 Petoskey Avenue after each ecstasy sale on July 13 and December 8, that Mr. Partin

11

delivered $400 of the $500 in sale proceeds from the December 8 sale to 5600 Petoskey Avenue, and that evidence of drug activity would probably be found at 5600 Petoskey Avenue Apartment E.

Defendant contends that officers did not have any statement directly implicating Defendant in drug activity, and that they had not actually observed Defendant engaged in any drug transactions. Defendant also contends that the affidavit did not establish the reliability of the "police operative" who engaged in the May 18, 2005 controlled buy from Mr. Partin.[2] Defendant further contends that officers did not conduct a full investigation, as reflected by the fact that the affidavit did not include any information regarding Defendant's criminal history. Finally, Defendant contends that there was insufficient information linking Defendant's residence to any criminal activity or suggesting that indicia of criminal activity would be found at that residence. However, no single type of evidence is required to establish probable cause, and our inquiry is simply whether "there is substantial evidence in the record supporting the magistrate's decision to issue the warrant," Upton, 466 U.S. at 728. Moreover,

_____

[2]The "police operative" who engaged in the May 18, 2005 controlled buy was actually Detective Shreves himself, as Defendant acknowledges. Although the affidavit may be ambiguous on its face as to the identity of the "operative," it is nevertheless clear on the face of the affidavit that the controlled buys were supervised by law enforcement officers, and that the statements by Mr. Partin to the "operative" on May 18 were confirmed during the later controlled buys of ecstasy from Mr. Partin on June 23, July 13 and December 8.

12

an affidavit may support the issuance of a warrant even if "[n]o single piece of evidence in it is conclusive" so long as "the pieces fit neatly together and, so viewed, support the Magistrate's determination." Upton, 466 U.S. at 733. "Finely-tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the magistrate's decision. . . . [I]t is clear that 'only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.'" Gates, 462 U.S. at 235 (quoting Spinelli v. United States, 393 U.S. 410, 419 (1969)). As discussed above, given all of the circumstances presented in the affidavit in this case, the magistrate could have reasonably concluded that there was a fair probability that contraband or evidence of a crime would be found in Defendant's apartment. The fact that some particular type of direct evidence was not presented, or that conclusive proof did not yet exist, does not negate the showing of probable cause here considering the totality of the circumstances. Therefore, the Motion to Suppress was properly denied.

B.

Defendant also contends that the warrant was invalid because the affidavit contained false or misleading information. In order to have been entitled to a hearing on this allegation, Defendant must have made a preliminary showing that "a false statement

13

knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." Franks v. Delaware, 438 U.S. 154 (1978).[3]  In addition, under Franks, even if a false statement was included in the affidavit, the offending information must be essential to the probable cause determination; if the offending information is excluded and probable cause still remains, no Franks hearing is required. Where the alleged falsity is an omission, the Defendant must show that the affiant omitted material facts "with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading." United States v. Colkley, 899 F.2d 297, 300 (4th Cir. 1990)(quoting United States v. Reivich, 793 F.2d 957, 961 (8th Cir. 1986)).

In the present case, Defendant contends that false information was included in the affidavit, or that the affidavit was false by

_____

[3]Defendant raises this issue on appeal in the context of his contention that the "good faith" exception to the exclusionary rule should not apply in this case. See United States v. Leon, 468 U.S. 897 (1984). This "good faith" exception prevents the suppression of evidence obtained by officers acting in reasonable reliance on an authorized search warrant even though that warrant is subsequently found to be invalid.  However, because the district court did not reach the issue of the "good faith" exception in this case, and because, like the district court, we conclude that the magistrate had before him a substantial basis for concluding that probable cause existed, we need not consider the "good faith" exception in this appeal.  Nevertheless, the district court specifically considered Defendant's request for a hearing pursuant to Franks based on Defendant's allegations that the affidavit was false or misleading, and Defendant has raised those allegations again on appeal.  Therefore, we will consider this Franks issue as part of this appeal.

omission, because the affidavit stated that after the controlled buy on December 8, Mr. Partin proceeded "directly" to 5600 Petoskey Avenue. Defendant, however, contends that in fact after the controlled buy on December 8, 2005, which occurred in the parking lot of a fast food restaurant, Mr. Partin entered the fast food restaurant and then left with his female companion before proceeding to 5600 Petoskey Avenue. On appeal, Defendant raises a similar issue regarding the July 13 sale, which also occurred at a fast food restaurant. The affidavit states that after the July 13 controlled purchase, Mr. Partin was followed from the buy location to 5600 Petoskey Avenue, but Defendant contends that Mr. Partin entered the fast food restaurant and ate with other individuals before proceeding to 5600 Petoskey Avenue. Defendant contends that by omitting this information, the affidavit misled the magistrate into inferring that Mr. Partin was taking the proceeds from the sale and immediately delivering them to Mr. Randolph at his apartment. However, the district court concluded that no hearing was warranted on this issue because there was no preliminary showing that this information (or omission) was false or that it was included or omitted with the intent to mislead.

Having reviewed the district court's decision, we conclude that the district court did not err in finding that no Franks hearing was required on this issue. As noted in the affidavit, all of the controlled buys were made under police control and

15

supervision. Although Mr. Partin entered the restaurants on July 13 and December 8 after engaging in the drug transaction on each occasion, nothing in the police reports or evidence presented would indicate that officers observed any other actions by Mr. Partin related to the sale proceeds before he went to 5600 Petoskey Avenue. In addition, it is undisputed that on both December 8 and July 13, Mr. Partin went straight to 5600 Petoskey Avenue after he left the restaurant where the controlled purchase had occurred. The fact that he entered the restaurants to eat or to retrieve his companion before leaving is a minor, immaterial omission in the circumstances, and does not render the information in the affidavit false or otherwise create a false or misleading impression. Moreover, Defendant has made no showing that the affiant, Detective Shreves, made the omission with "the requisite intent to mislead." Colkley, 899 F.2d at 301. Thus, because Defendant did not make any preliminary showing that the affidavit included any false statement or omission made with intent to mislead or with reckless disregard of whether it thereby made the affidavit misleading, no Franks hearing was required, and the district court's determination on this issue is affirmed.

III.

Finally, Defendant challenges the calculation of his advisory sentencing range under the U.S. Sentencing Guidelines. In

16

calculating the applicable advisory guideline range under the U.S. Sentencing Guidelines the district court included a 4-point enhancement under section 2K2.1(b)(5) for possession of the firearm "in connection with" another felony offense. Defendant contends that there was not sufficient evidence to establish that the firearm was possessed in connection with another felony, as evidenced by the jury verdict finding him not guilty on the charge of possession of a firearm in furtherance of a drug trafficking crime. Defendant contends that the evidence established instead that he possessed the firearm to protect his family against a recent "spate of violence," including a recent shooting into his apartment, and not in connection with any other felony.

To support an enhancement under section 2K2.1(b)(5), the Government must prove by a preponderance of the evidence that the Defendant possessed the firearm and that the firearm was possessed "in connection with" another felony offense. United States v. Nale, 101 F.3d 1000 (4th Cir. 1996); United States v. Garnett, 243 F.3d 824 (4th Cir. 2001). This requires that the firearm had some purpose or effect with respect to the felony, that is, that the firearm facilitated or had the potential to facilitate the offense. United States v. Blount, 337 F.3d 404 (4th Cir. 2003) (adopting standard set out in Smith v. United States, 508 U.S. 223 (1993), involving use of a firearm "in relation to" a drug trafficking crime under 18 U.S.C. § 924(c)). While the presence of the

17

firearm cannot be the result of accident or coincidence, it is enough if the firearm was present for protection or to embolden the actor with respect to the other felony. <u>See</u> <u>United States v. Lipford</u>, 203 F.3d 259, 266 (4th Cir. 2000). The section 2K2.1(b)(5) enhancement is designed to apply "if, in addition to committing a firearms offense within the scope of § 2K2.1, [the defendant] commits a separate felony offense that is rendered more dangerous by the presence of a firearm." <u>Blount</u>, 337 F.3d at 406.

In making the Guideline calculations in this case, the district court had before it evidence that the loaded pistol was located in Defendant's bedroom in his dresser drawer, near the ecstasy pills, marijuana, and currency from Defendant's drug sales. The district court also had before it evidence that Defendant engaged in drug sales from his residence where the firearm was located. The district court found that Defendant had been a drug dealer for some time and kept his drug supply at his residence where the loaded pistol was found. The district court specifically concluded that Defendant possessed the firearm for the purpose of protecting his drugs and his drug trafficking assets. These findings of fact are not clearly erroneous and support the conclusion that Defendant's possession of the firearm had the potential to facilitate his felony drug trafficking offenses, by at least providing protection and emboldening the Defendant.

18

Defendant contends that the Presentence Report used the wrong standard in assessing the enhancement by concluding that it was "not clearly improbable" that Defendant possessed the firearm while he engaged in the drug trafficking offense.  Defendant notes that this is the standard that applies with respect to section 2D1.1(b)(1), which provides an enhancement for drug trafficking crimes where a dangerous weapon is possessed.  See Nale, 101 F.3d at 1004 (contrasting section 2D1.1(b)(1) and section 2K2.1 standards).  However, although the Presentence Report included a reference to the section 2D1.1(b)(1) standard, the district court did not apply that standard, and instead found that the Government had presented sufficient evidence to support the enhancement under the applicable section 2K2.1(b)(5) standard, specifically that the Government had established that Defendant possessed the firearm in connection with his felony drug trafficking, by possessing the loaded firearm in his home where the drugs and drug proceeds were located with the purpose of protecting his drugs and his drug trafficking assets.

Defendant also contends that the enhancement is improper given his acquittal on the charge of possession of a firearm in furtherance of a drug trafficking crime under 18 U.S.C. § 924(c).  However, it is well established that a sentencing court may consider the broad context of a defendant's conduct in determining an appropriate sentence, including conduct underlying an acquitted

19

charge, so long as the conduct has been proved by a preponderance of the evidence. See United States v. Watts, 519 U.S. 148, 152 (1997) (holding that Double Jeopardy Clause did not bar consideration of acquitted conduct in sentencing); see also United States v. Duncan, 400 F.3d 1297, 1304-05 (11th Cir. 2005) (holding that the Supreme Court's decision in United States v. Booker "does not suggest that the consideration of acquitted conduct violates the Sixth Amendment as long as the judge does not impose a sentence that exceeds what is authorized by the jury verdict" and instead "sentencing judges can continue to consider relevant acquitted conduct when applying the Guidelines in an advisory manner"). In the present case, the district court engaged in the requisite fact-finding by a preponderance of the evidence, computed the advisory guideline range, and then considered the resulting advisory guideline range along with the other sentencing factors in 18 U.S.C. § 3553(a) in imposing sentence in this case. We find no error and therefore affirm the sentence imposed by the district court.[4]

---

[4]Defendant's sentencing was on March 27, 2006, and the Sentencing Guidelines in effect on that day were applied. Effective November 1, 2006, section 2K2.1(b)(5) was renumbered and became section 2K2.1(b)(6) with a new Application Note 14, which provides that this enhancement applies if the firearm "facilitated, or had the potential of facilitating, another felony offense" and applies "in the case of a drug trafficking offense in which a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia" because "the presence of the firearm has the potential of facilitating another felony offense." This new Application Note adopts the standard articulated in Smith

20

IV.

For all of the reasons discussed above, we conclude that Defendant's Motion to Suppress was properly denied, and his advisory Guidelines sentence was properly calculated. We therefore affirm the judgment of the district court.

AFFIRMED

---

v. United States, 508 U.S. 223 (1993), requiring that the firearm have facilitated or had the potential of facilitating another felony offense, which is the same standard previously adopted in this Circuit, and the new Application Note would not affect the application of the enhancement in the present case.